## Jarrot N. Galbraith

*v.*

## Christian McLain *et al.*

84 379
30a 562

84 379
132 461

84 379
157 41

84 379
61a 512

84 379
170 198

84 379
f93a ³654

84 379
200 ¹479
e201 ¹180
201 ²181

1. Contract—*by a child with parent, to release to other children all claim to parent's estate, is valid and binding.* Where a father executes a deed for a tract of land to one child, who accepts and takes possession of the same, upon the express understanding and agreement that it is in lieu of all claim such child may have in and to the residue of the father's estate upon his death, and that such child will release to the other children all his claim in expectancy to the residue of the estate, such contract is legal and binding, and will be enforced in equity.

2. Same—*when not within Statute of Frauds, nor contrary to Statute of Wills.* A contract made by a child with his father, in consideration of a conveyance of land to him by the father, that he will release to his brothers and sisters all claim in expectancy to the residue of the father's estate, is not within the Statute of Frauds, nor is it contrary to the provisions of the Statute of Wills.

3. Witness—*when widow is competent in suit between heirs of her husband.* In a suit between the heirs at law of a decedent, for a partition of the land of deceased amongst a portion of the heirs, and to exclude one heir on the ground of a contract between him and the deceased, the widow of the deceased, not being a party to the suit, is a competent witness as to a transaction or conversation which occurred with her husband in his lifetime.

4. Same—*party on his own behalf, in suit between heirs, not competent.* In a suit between the heirs of a deceased person, the fact that the scrivener who was employed to draw a deed, executed by the deceased to one of the heirs litigant, testified to a conversation between them at the time the deed was drawn, does not make such heir a competent witness on his own behalf in relation to the same conversation, the scrivener being in no legal sense an agent of the deceased, except for the special purpose of drawing the deed.

Appeal from the Circuit Court of Coles county; the Hon. Oliver L. Davis, Judge, presiding.

Mr. A. M. Peterson, for the appellant.

Mr. S. M. Shepard, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a proceeding, on the equity side of the Coles circuit court, instituted by Christian McLain and others, heirs at law of John Galbraith, deceased, complainants, and against Jarrot N. Galbraith, Nancy Lachbrook and others, also heirs at law of the same decedent, defendants, the scope and purpose of which was to enforce the specific performance of a contract, alleged to have been made by the deceased, John Galbraith, in his lifetime, with Jarrot N., and for a partition of the lands, of which said John died seized, among the heirs at law, to the exclusion of Jarrot N., and for general relief.

There was a demurrer to the bill by Jarrot N., which was overruled, and thereupon Jarrot N. made answer to the same, as did the other adult defendants, the infant defendants answering by their guardian *ad litem.* On replication filed, the cause was heard on the pleadings, depositions and oral testimony, and a decree passed as prayed, to reverse which, Jarrot N. Galbraith appeals, assigning various errors not necessary to be specially noticed, the view we have taken of the case disposing of all of them which we deem important.

John Galbraith, the ancestor of these parties litigating, died on the 8th day of September, 1874, leaving a widow, Rebecca, his second wife, who has no interest in this controversy, Jarrot N., an only son, five daughters, and the children of a deceased married daughter, infants, defending by their guardian *ad litem.* The deceased died seized and possessed of a small tract of land, occupied as his homestead, containing about one hundred and twenty acres and some personal property. He had owned two hundred and ten acres, forty acres of which he had sold and conveyed to one B. F. Cutler and Thomas Galbraith, and fifty acres he had conveyed to his son Jarrot N. This conveyance was made on February 15th, 1867, and the circumstances under which it was made, and the intention of the parties thereto, give rise to this contention. The bill charges the conveyance was made to Jarrot N. as the full amount of his share of his father's estate, and in lieu of his

expectant portion of his father's property; that it was received by Jarrot N. as such, and that, at the time of the conveyance, it was expressly agreed and stipulated between them that, at the death of the father, the residue of the lands should pass to the other children, free from all claim of Jarrot; that Jarrot accepted the conveyance with that understanding, and in consideration thereof he agreed to execute to his father, a release of all his, Jarrot's, interest in the remaining portion of the real estate of his father. It is alleged, this release Jarrot has never executed, but has wrongfully refused so to do.

Jarrot, in his answer, denies all these statements, claiming the land was conveyed to him as an inducement to remain with his father, and forego an expedition to California, which he intended to make with a party of young men from his neighborhood, in February, 1852; that in 1855, on his marriage, he entered into possession of the land, improved it, paid taxes on it, and, in February, 1867, received the deed; that he worked for his father, and managed his business and his farm affairs; that his father never made any written agreement to give the residue of his lands to the female portion of his children, and sets up here the Statutes of Frauds and of Wills, and insists that he is entitled to one inheritable share in the residue of the lands.

The theory of the bill is not precisely as stated by appellant, that Jarrot N., in consideration of this conveyance of fifty acres of land, agreed to execute a release in writing to his father, of all his interest in the residue of the land owned by his father, which might, by possibility, descend to him, Jarrot N., at the death of his father; but the true question arising is, was the deed for the fifty acres executed by the father to the son as an equivalent for his expectant share of his father's estate, and was it accepted by the son as such. There was much testimony in the cause, which we will not undertake to recapitulate, or trace step by step. The whole volume of testimony, eliminating such portions of it from the record as may be considered objectionable, forces the conviction that such was the agreement and understanding when the deed was made,

and accepted by appellant, and the only question is, does the law sanction such an agreement. It is insisted by appellant that both the Statute of Frauds, and certain provisions of the Statute of Wills are in the way of the enforcement of such a contract. We do not think either statute can be invoked against the transaction set up in this bill of complaint. Certainly not the Statute of Frauds, for there is a deed in writing for the fifty acres, accepted by appellant, the benefit of which he is enjoying; and, as to his expectancy of an inheritance, that can not be said to be such an interest in land as he could not surrender by parol. As to the conflict with the Statute of Wills, there being no pretense, in the bill, that the land was an advancement, it is replied, this court held in *Bishop et al.* v. *Davenport et al.* 58 Ill. 105, that the provisions of the Statute of Wills bearing upon the subject of advancements have no application to a case of this character. In that case, the release was by parol, not in writing under seal. Here, there is no writing, and it is one of the objects of the bill of complaint to compel appellant to make such a writing, or in other ways preclude him from claiming any part of the residue of the land of which his father died seized and possessed, and this is done effectually by the decree rendered in this cause. We look upon the arrangement as one of a family nature, designed by the father as a disposition of his property without the formality of a will. It is shown by the proofs that, on the sale of the forty-acre tract to Cutler and Galbraith, he distributed to each of the girls two hundred dollars, the largest share of the proceeds, and to appellant no part thereof. His share of the estate was represented by the deed for fifty acres, being twice as much, and more, as he would have received under the estate in case of intestacy, and comparing what he has received, with what his sisters will get, it is more than double. In justice purely, he has no right to claim any more, nor is it fair or right he should attempt to break up this family settlement his father made, and in which he acquiesced by taking possession of his share, and enjoying it unmolested.

It is complained by appellant, that the testimony of Rebecca Galbraith, the widow, was improperly admitted. Under the authority of *Deniston et al.* v. *Hoagland, Guardian,* 67 Ill. 265, she was a proper witness, as neither her husband nor herself was a party to the suit. The fact that the transaction or conversation she spoke of occurred during the marriage, did not, under the act referred to, render her incompetent, as she was not a witness for or against her husband.

It is complained that the court refused to permit appellant to testify, in his own behalf, to the conversation at the time the deed was made at the house of Wright. It can not, with any propriety, be claimed that Wright, who wrote the deed, was the agent of John Galbraith, and, therefore, under the second section of chapter 51, appellant was competent. Wright was a mere scrivener, employed for a special purpose, and in no legal sense was an agent whose acts and declarations would bind his principal.

It is further complained, that the acts and declarations of the parties, when they were at Christian McLain's, were inadmissible, as the meeting there was for the purpose of a compromise. The meeting of the heirs at that place was to select a proper administrator on the estate, and we perceive nothing which occurred then having the appearance of an effort at a compromise. What was there said and done, were proper subjects for consideration.

Viewing the case as it is presented by the record, we do not think a reasonable doubt can be entertained that John Galbraith made this deed of these fifty acres of land to appellant, and the same was accepted by him, as the full share of his father's estate, and with the express understanding he would make no claim to any other portion of the estate. He ought to be concluded by what has been done, and the court decreed properly, and the decree is affirmed.

*Decree affirmed.*