## CHARLES H. SAGAR
## v.
## F. H. ECKERT.

1. FIXTURES—BUILDING FOR TRADE—WHEN MAY BE REMOVED.—A temporary building, erected for the purposes of trade, and with the intention of removing the same, does not become a fixture. If the building was erected with an understanding had with the owner of the land, that it might be removed, it can be taken away after his death, if done within a reasonable time.

2. DAMAGES FOR REMOVING.—The appellee having only a life estate in the premises, can, in case of a removal of the building, only recover damages to the possession—such damages as were sustained to her life estate—and not for the full value of the building.

3. EVIDENCE—DEATH OF PARTY—HUSBAND AND WIFE.—The widow of the testator was not a competent witness to testify in reference to statements made by her deceased husband during his life, in relation to his partnership business.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Messrs. WILDERMAN & HAMILL, for appellant; that the fact of the building being set on top of the ground, sufficiently shows it was intended as a temporary structure—a mere chattel—cited Kelly v. Austin, 46 Ill. 156; Ham v. Kendall, 111

Sagar v. Eckert.

Mass. 297; Taft v. Stetson, 117 Mass. 471; O'Donnell v. Hitchcock, 118 Mass. 401; Adams v. Lee, 31 Mich. 440.

Declarations made by the testator against his interest in reference to the property, were admissible: 1 Greenleaf's Ev. § 189; Vennum v. Thompson, 38 Ill. 143; Randegger v. Ehrhardt, 51 Ill. 101; Miner v. Phillips, 42 Ill. 123; Whitaker v. Wheeler, 44 Ill. 440.

Such declarations may be proved by his widow: Deniston v. Hoagland, 67 Ill. 265; Galbraith v. McLain, 84 Ill. 379.

The character of personal property, and right of removal, may be preserved by an agreement with the owner of the land, previous to annexation: Ewell on Fixtures, 66; Taft v. Stetson, 117 Mass. 471; Dooley v. Crist, 25 Ill. 551; Dame v. Dame, 38 N. H. 429.

It is not necessary that the widow of the land owner should have had notice of such an agreement: Harris v. Heuser, 42 Ill. 425; Rhoads v. Rhoads, 43 Ill. 239; Russell v. Richards, 10 Me. 429; Dubois v. Kelly, 10 Barb. 508; Mott v. Palmer, 1 Comst. 564.

Possession and occupancy of the building before and after the testator's death, was sufficient notice of appellant's rights: Lumbard v. Abbey, 73 Ill. 177; Amic v. Young, 69 Ill. 542.

If the building was erected by the firm for their business, although on the soil of one of the partners, it is personal property: Kelly v. Austin, 46 Ill. 156; Adams v. Lee, 31 Mich. 440; McDavid v. Wood, 5 Heisk. 95; Saunders v. Stallings, 5 Heisk. 65; Kerr v. Kingsbury, 17 Am. Law Reg. 638; Holbrook v. Chamberlain, 116 Mass. 155.

Mr. JAMES M. DILL, for appellee; that if the building was a trade fixture it should be removed at once, on the death of the owner of the soil, cited 1 Washburn on Real Property, 12.

Having rented the property from his sister, appellant is estopped from claiming it as his own: 1 Washburn on Real Property, 28; Loughran v. Ross, 45 N. Y. 792.

Appellee has a right of action to the extent of her life interest, for the removal of the building: Willard on Real Estate, 79; Fay v. Brewer, 3 Pick. 203.

Justices of the peace have jurisdiction in actions for damages for injury to real property: Rev. Stat. Chap. 79, § 13.

TANNER, P. J. This was an action brought by the appellee, before a justice of the peace, to recover for damages done to real estate. The cause was taken to the Circuit Court of St. Clair county, and there submitted to a jury, and a verdict returned for the appellee. An application for a new trial was made and denied, and the cause is brought to this court by appeal. The facts disclosed by the record are that Charles Sagar, the father to the parties to the suit, died testate. By his last will and testament he devised to the appellee a life interest in and to certain real estate, with a remainder to her children. At the time of the testator's death there was upon the real estate so devised a temporary wooden building, erected by the appellant at his own expense, amounting to one hundred and fifty dollars, for the purpose of storing agricultural implements, in the sale of which he and his father had been engaged as partners. The father received one-half of the profits, but the business was conducted by the appellant and in his own name. The appellant was in possession of the building at the testator's death, and so continued for the period of seven months or more, at the expiration of which he demolished it, and removed the material of which it had been constructed. The main contest between the parties was whether the building was a fixture or personal property. We think there is no great difficulty in solving this inquiry, to the advantage of appellant. The only testimony given, and tending to constitute the building a fixture, is that of the husband of the appellee. He states: "It was boarded up the sides, with boards on ends. It was built on sills, the siding nailed to the sills at the bottom; covered with a tin roof, joined to the building east of it. There was no foundation under the building; there was a sill set in the ground, I would think about six inches. I saw where they were taken out. They dug down into the ground, and they were put into the ground." The appellant says: "I put it up with an intention of taking it down; that was the understanding when I put it up—that I might remove it at any time. The building was set on the top of the ground; it was built first by

Sagar v. Eckert.

leveling the ground, and throwing down grub plank the thirty foot way, every two feet, for a foundation. I then crossed it with grub plank, and made the floor; grub plank is lumber that is used in rafting, and is all bored through with holes; then we took four-by-four for the corner posts, and just sawed them off square, and set them down on the floor, and put a few nails to hold them in their places. We then sided it up with rough siding, up and down, and threw joists across the top, and they served as rafters also. I put it up with the understanding that I might remove it." This is all the testimony in reference to the character of the building, and the purposes for which it was erected

The case of Kelly v. Austin, 46 Ill. 158, is singularly in point, the facts being substantially the same as in the case now under consideration. The Court, in disposing of the question, say: " It was placed on the lot several months after the mortgage was given by the mortgagor, and his partner in the house-joiner business. It was placed on the lot by the firm for the use of their business. It seems to have been made of rough materials, slightly built, placed on blocks resting on boards, laid on the surface of the ground. It was not placed on a stone or brick foundation, and in no manner let into the ground. From the evidence it would seem to be manifest that it was not intended to be permanent in its character, or to have been placed there as an improvement of the lot, but seemingly to answer the convenience of the partnership. It was not constructed with the funds of the mortgagor, but with labor, material and means of the firm. If it did not become a part of the real estate, it was a chattel owned by the partnership. Had the building been of a permanent character, or had it been placed there with the intention of permanently remaining, then it could not be severed without the consent of the mortgagee. Or had it been placed on the lot by the mortgagor with his own means, it might have presented a different question. But from the character of its structure and the purpose for which it was employed, it would seem that it was not designed for any other than a temporary use, and to be removed from the lot when the object of its erection had been accomplished."

In the foregoing case there seems to have been no proof of any agreement having been made by the firm, either with the mortgagor or mortgagee, for the removal of the building at the time of its erection. But the mortgagor formed a co-partnership with another to engage in the business or trade of carpentering, and the firm erected the shop. The mortgage was foreclosed under a power of sale, and the purchaser of the property filed a bill to enjoin the mortgagor from removing the shop. The doctrine enunciated by the decision in the Kelly case, *supra*, is that where there is no proof of a special agreement for the removal of the building between the owner of the ground and the person by whom it was erected, the question as to this right, based upon the intention of the parties, will be determined by the character of the building and the purposes for which it was erected. And this we believe to be the settled rule. 2 Washburn on Real Property, and authorities cited in note thereto.

But it will be observed that the case at bar is not entirely confined to the proof in reference to the character of the structure, to reach the intention of appellant and his father in respect to the removal of the shed.

The appellant states in his testimony, without objection, that he "put the building up with the understanding that he might remove it." We do not hesitate to hold that the evidence, when considered in reference to the doctrine of fixtures, as found in the elementary works upon this branch of the law, and in the cases adjudicated in the courts of our own States, shows clearly that the building was of a temporary character, and erected alone for the purposes of trade, and was therefore personal and not real property. But the counsel for the appellee urges that if the building was personal property, the appellant was only a tenant at will, and by his not having removed the property at once upon the death of his father, his right to do so had been lost long before the removal. This view cannot be applied to this case. If the appellant erected the structure with an understanding had with his father that he might remove it, we think he could do so after the father's death, provided he did so within a reasonable time thereafter. " If an article of the

Sagar v. Eckert.

character of a fixture be annexed to the freehold of another by his consent, the owner may remove it any time." Washburn on Real Property, 3d Ed. top p. 20. But if the record contained no evidence of an understanding for its removal at the time of erection, and the right to do so was determined solely by the purposes and character of its structure, we still think the doctrine cited in Washburn on Real Property would not affect the right claimed here by appellee. An examination of all the authorities cited in support of the text shows that they were founded upon leases for a definite term of years, where the tenant suffered his term to expire without the removal of fixtures.

In this case the appellant was doing business in the building as a partner of the father at the time of his death. The building was never surrendered to nor demanded by the devisee; but it appears that at various times communications passed between the parties in reference to the renting of the building or the "renting of the ground" upon which it stood; as to which we cannot fully determine, from the contradictory character of the evidence. The appellee, however, admits that she told appellant to occupy it, and whatever was reasonable would be satisfactory. We are disposed to hold that the appellant had a reasonable time in which to remove the building after the father's death, and that the delay was occasioned by the various efforts for a lease of the ground or building, and therefore did not constitute a waiver or forfeiture of the right to remove it. It is also clear that the judgment of the court cannot stand upon the theory that the building was a fixture. The appellee had a life estate, and she could only recover damage to the possession. The evidence shows the monthly rental value of the building to have been from three to four dollars, and it was held by appellant seven and two-third months before its removal. We, upon the evidence, can reconcile the judgment with no other theory but that it was for the full value of the building.

The extent of the recovery of the appellee was the damages sustained to her life estate, and not the value of the fixtures. This could not be approximated by any other just rule than

VOL. III.    27

by taking into consideration the monthly or annual rental value, less taxes and costs of repairs, and multiplying it by the probable duration of the life of the tenant. Greer v. Mayor, &c. of N. Y. 1 Abb. Pr. 206. This was not done. We think the court did not err in refusing to allow the widow of the testator to testify in reference to the statements made by him in reference to the right of the appellee to remove the building. The common law rule which excludes the survivor of the relation of husband and wife from testifying in a case like the one before us, has, singularly enough, escaped amidst all the legislative warfare made upon this branch of the law. The rule, in all its bearings, was thoroughly discussed in Reeves v. Herr et al. 59 Ill. 81, and was there held to have undergone no statutory change to that time. Nor do we think that any alteration has been since made, either by statute or judicial construction. Sec. 5, Chap. 51, R. S. 1874, to which we are referred, does not, as supposed by counsel, affect the question. It only applies to actions existing between husband and wife. In the case at bar the widow was called to testify in reference to matter or knowledge she acquired from her deceased husband, concerning his business transactions with the appellant; and this is all that is required to render her inadmissible as a witness, under the rulings in Reeves' case, *supra*. But the cases of Denniston v. Hoagland, 67 Ill. 265; Galbraith v. McLain, 84 Ill. 379, are cited as construing our statutes to have changed this rule. A careful examination of these cases will show it to be otherwise. In the first, the court only disposed of the objection that was raised, and nothing further, which was that the widow was incompetent to testify, by reason of the 5th section of the chapter on evidence, above cited. Upon no other ground was her incompetency urged. The court very properly held that section five had reference only to actions between husband and wife. And in Galbraith v. McLain the same objection was raised, and nothing more. So much of the opinion of the court as is applicable, we give: "It is complained by appellant that the testimony of Rebecca Galbraith, the widow, was improperly admitted. Under the authority of Denniston v. Hoagland, *supra*, she was a proper witness, as neither her husband nor

Sagar v. Eckert.

herself was a party to the suit.   The fact that the transaction or conversation she spoke of occurred during marriage did not, under the act referred to, render her incompetent, as she was not a witness for or against her husband."   Doubtless, if the question had been raised in either case, as to whether she could testify as to the conversations had with the husband in reference to the transactions under investigation, the rule laid down in Reeves' case would have been strictly followed.   We think the court erred in not giving the appellant a new trial. The cause will be reversed and remanded.

Reversed and remanded.