Alexander Long *et al.*

*v.*

William P. Long *et al.*

*Filed at Ottawa November 13, 1886.*

1. Advancement—*in what manner to be evidenced.* An advancement which is not evidenced in the manner required by the statute, is, in legal effect, no advancement at all, however clearly it may appear it was so intended.

2. Specific performance—*contract must be clear in its terms.* A contract which is sought to be specifically enforced, must be clear, certain and unambiguous in its terms, and must be admitted by the pleadings, or proved with a reasonable degree of certainty. It is not sufficient to show that a contract of some kind exists between the parties, and that it has, in whole or in part, been performed by the complainant, but all its material terms must be satisfactorily proved or admitted.

3. Heir's *expectancy—release—as to evidence thereof.* The mere making and delivery of a quitclaim by a person to his grandfather, as to the lands of the latter, afford no evidence of an intention on the part of the grantor to release an expected inheritance.

4. In this case the facts and circumstances relied on as evidence of a contract of a prospective heir with his ancestor, to take certain property conveyed to him, in full of his share in the grantor's estate, as heir, are stated, and held insufficient to show such agreement.

Appeal from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Lee county; the Hon. John V. Eustace, Judge, presiding.

Messrs. W. & W. D. Barge, and Messrs. W. E. Ives & Son, for the appellants:

The land conveyed was not charged to the grandson by the intestate, nor did the grandson receive it as an advancement, but in full payment and satisfaction of his portion of the estate. Such releases of an heir's expectancy have frequently been sustained. *Bishop* v. *Davenport,* 58 Ill. 110; 2 Story's Eq. sec. 1040 b.

All agreements by expectant heirs in regard to their future contingent estates, when fairly made, will be enforced in

equity. *Parsons* v. *Ely*, 45 Ill. 232; *Kenney* v. *Tucker*, 8 Mass. 142; *Quarles* v. *Quarles*, 4 id. 680; *Hobson* v. *Trevor*, 2 P. Wms. 191; *Fitch* v. *Fitch*, 8 Pick. 479; *Witherell* v. *Witherell*, 2 Eng. Ch. 184; *Varick* v. *Edwards*, 1 Hoff. Ch. 382.

The declarations of a party to the record are admissible in evidence against him. *Ashlock* v. *Linder*, 50 Ill. 169; *Robbins* v. *Butler*, 24 id. 387; *Railway Co.* v. *Boone County*, 44 id. 240; 1 Greenleaf on Evidence, secs. 171, 172, p. 227.

The declarations and statements of William Long were competent evidence. *Cline* v. *Jones*, 111 Ill. 563; 1 Greenleaf on Evidence, secs. 106, 189; *Galbraith* v. *McLain*, 84 Ill. 379.

Mr. John D. Crabtree, for the appellees:

The bill seeks to compel the specific performance of an alleged contract. This will only be decreed, by a court of equity, where the right to the relief sought is established by a clear preponderance of the evidence. *Fleischman* v. *Moore*, 79 Ill. 539; *Brink* v. *Steadman*, 70 id. 241; *Rolls* v. *Rolls*, 82 id. 243; *Bowman* v. *Cunningham*, 78 id. 48; *Allen* v. *Webb*, 64 id. 342; *Hartwell* v. *Black*, 48 id. 301; *Simmons* v. *Hill*, 4 Harr. & McH. 252; *Hazelton* v. *Putnam*, 3 Pinney, 107; *Aday* v. *Echols*, 18 Ala. 353.

William P. Long was a competent witness as to the agreement between his grandfather and himself, concerning the conveyance to him of the land in question. None of the parties to this record either sue or defend as heirs, and the statute cited by counsel has no application to a case like this. *Pigg* v. *Carroll*, 89 Ill. 205; *Mueller* v. *Rebhan*, 94 id. 149.

Evidence as to the declarations of William Long, made to third persons in the absence of William P. Long, after the deeds were delivered, and not connected with any act being performed in relation thereto, was clearly inadmissible as against William P. Long, being only hearsay. *Bishop* v.

*Georgeson,* 60 Ill. 484; *Bowen* v. *Rutherford,* id. 41; *Kent* v. *Mason,* 79 id. 543.

Declarations of the ancestor, under whom both parties claim, unaccompanied by any act showing what disposition he had made or intended to make of his estate, are not evidence. *Chadwick* v. *Webber,* 3 Greenlf. 141; *Hatch* v. *Straight,* 3 Conn. 31; *Faulkner* v. *Watts,* Atk. 407; *Bulkeley* v. *Noble,* 2 Pick. 337; *Haynes* v. *Rutter,* 24 id. 242; *Ladd* v. *Abd,* 18 Conn. 513; 1 Greenleaf on Evidence, sec. 110; *Mims* v. *Sturtevant,* 23 Ala. 664; Starkie on Evidence, note 1, page 88; *Dunn* v. *Simpson,* 6 Binn. 478; 6 Am. Dec. 490; *Morse* v. *Thorsell,* 78 Ill. 600; *Osgood* v. *Manhattan Co.* 3 Cow. 612; *Jackson* v. *Kniffen,* 2 Johns. 31; 3 Am. Dec. 390, note 395; *Meeker* v. *Boylan,* 4 Dutch. 283; *Chase* v. *Ewing,* 51 Barb. 597; *Dewey* v. *Goodenough,* 56 id. 54; *Sanford* v. *Sanford,* 5 Laws, (61 Barb.) 293.

Mr. Justice Mulkey delivered the opinion of the Court:

The present litigation has its origin in a dispute between the children and grandchildren of William Long, deceased, about the right of William P. Long, one of the grandchildren, to share in the distribution of the personal estate of the deceased.

William Long, the ancestor of the distributees, died intestate, on the 4th of July, 1877, leaving little real but a large amount of personal estate. In August of the same year, William R. Long, a son of deceased, was appointed administrator of the estate, and qualified as such. On the 30th of September, 1880, the question in dispute was brought to a hearing, in the county court, upon the amended report of the administrator, who was acting in concert with the other heirs in resisting the claim. That court, upon hearing the proofs, held that William P. Long was entitled to his distributive share of the estate, fixing the amount at $5240, and there-

upon entered an order that the administrator pay the same within thirty days. From this order the administrator prosecuted an appeal to the circuit court, which, so far as this record shows, is still pending. On the 10th of March, 1881, and pending said appeal, the heirs of William Long other than the appellees, who were made defendants, filed the present bill, praying that William P. Long be decreed to execute a release of all interest and claim in and to the estate, and that he be perpetually enjoined from prosecuting any suit or action for the enforcement or recovery thereof. The cause was heard before the circuit court of Lee county, upon the pleadings and proofs, resulting in a decree dismissing the bill for want of equity. On appeal, that decree was affirmed by the Appellate Court for the Second District, whence the case comes to this court for review.

The theory upon which it is sought to exclude William P. Long from participation in the estate, is based, in part, upon certain transactions that occurred between him and his grandfather, something over a year before the latter's death. It is an undisputed fact, that on the 3d of June, 1876, William Long conveyed to his grandson, William P. Long, a tract of land containing a fraction over two hundred and forty-nine acres, for the expressed consideration of $4600, and that the latter, at the same time, executed to him notes amounting, in the aggregate, to $4000, and a mortgage upon the conveyed premises, to secure the same, and also a quitclaim deed for a certain other tract of land, which was understood by both of them to belong to William Long, and in which William P. claimed no interest, though there is evidence tending to show that the latter did have the legal title to at least a small interest in an eighty-acre tract covered by the quitclaim deed.

While these transactions are undisputed, there is a wide and radical difference between counsel as to the object and purposes with which they were entered into. The claim of

41—118 Ill.

the bill, as originally framed, is, in substance, that the conveyance of the two hundred and forty-nine acres of land, less the $4000, for which the notes and mortgage were taken, was intended by the grandfather as an advancement, in full, of the grandson's presumptive share in his estate, and that the latter accepted it as such; that the land, at the time of the transfer, was worth, in excess of the $4000, more than the grandson's share of the estate at that time or at the time of the grandfather's decease. William P. Long, by his answer, admits the conveyance to him of the two hundred and forty-nine acres of land, but denies that it was made in pursuance of the special agreement set forth in the bill. On the contrary, it is positively averred that no such agreement was ever made, but charges the conveyance in question was made under the following circumstances, viz.: That William Long, for many years before his death, made his home with his son, James Long, the father of appellee, and was living with him at the time of the death of the latter, in 1870; that in 1864, James Long, being desirous of purchasing two hundred acres of the two hundred and forty-nine acre tract in question, and not having the money for that purpose, his father purchased it for him, taking the deed in his own name, with the understanding that when James was able to pay for it, he was to have it at the same price his father paid for it, James agreeing in the meantime to pay a reasonable rent in lieu of interest on the money advanced in its purchase; that James Long had resided on the land, under this agreement, about three years before his death; that upon his decease, it was mutually agreed between William Long and appellee, that the latter was to have the land on the same terms offered to and accepted by his father; that appellee took possession of it with this understanding, and paid rent therefor accordingly; that afterwards, to-wit, on the 2d of February, 1875, appellee being desirous of securing the remainder of the two hundred and forty-nine acre tract, the said William purchased it for

him, on the same conditions the other was purchased; that the two hundred acres first purchased cost $3600, and the forty-nine acres cost $1000, making $4600 all together; that on the 3d of June of the following year, the above agreement and understanding with respect to the land was finally consummated by William Long conveying to appellee the two hundred and forty-nine acres of land, and the latter paying him $600 in cash, and executing to him his four promissory notes of that date, for the sum of $1000 each, payable in one, two, three and four years, respectively, with interest thereon at the rate of eight per cent per annum, the amount thus paid and secured to be paid being the exact amount which the land cost.

A vast amount of evidence was introduced at the hearing, in support of these respective theories, which are formally set forth in the pleadings, and we have examined it with much care and deliberation, in order, if possible, to arrive at the very truth of the matter in dispute, and thus reach a satisfactory conclusion, at least to ourselves. In our efforts to perform this duty, our labors have been not a little augmented by the unusual amount of incompetent testimony that has been incorporated into the record, and which, for that reason, can be of no avail in disposing of the case. Even the relevant testimony has taken such wide range as to absolutely forbid a discussion of it in detail, and we shall not, therefore, attempt to do so, but will content ourselves with adverting to such portions of it as are deemed most important.

The bill, as originally drawn, proceeds entirely, as we construe it, upon the theory that the conveyance of the two hundred and forty-nine acres of land was a mere advancement. That the bill can not be maintained upon the theory of an advancement, is quite clear. Indeed, this is conceded in appellants' reply brief. The 7th section of chapter 39 of the Revised Statutes, entitled "Descent," expressly provides that "no gift or grant shall be deemed to have been made in

advancement, unless so expressed in writing by the intestate as an advancement, or acknowledged in writing by the child or other descendant." There is not the slightest allusion in the conveyance of the property in question, or in the mortgage or quitclaim deed executed at the same time, to an advancement, nor is it claimed or pretended there is any other instrument or writing wherein the conveyance of said land is charged by the intestate or acknowledged by appellee as an advancement. This becoming apparent in the progress of the suit, complainants found it necessary to so amend their bill as to place the right to relief upon the distinct and substantive charge, "that at the time of the conveyance of the two hundred and forty-nine acres of land, it was expressly agreed and stipulated between William and William P., that at the death of William the residue of his property should pass to his other heirs, free from all claim of William P.; that William P. accepted said conveyance with that understanding, and *agreed*, in consideration thereof, to execute to William in his lifetime, or to his heirs after his death, a release of all claim or interest in the remaining portion of the estate of William."

These averments inserted in the amended bill, change its entire character. As amended, the bill, in legal effect, is one for specific performance, and, consequently, must be governed by the general principles applicable to such bills. Perhaps the most important of these principles, and the one which is presented at the very threshold of every case, is, that the contract sought to be enforced "must be clear, certain and unambiguous in its terms, and must be either admitted by the pleadings, or proved with a reasonable degree of certainty." It is not sufficient, within the rule, to show that a contract of some kind exists between the parties, and that it has, in whole or in part, been performed by the complaining party, but all the material terms of the contract must be satisfactorily proved or admitted. This is manifest from the very nature of the relief sought, for how could the court, in any

case, direct the performance of an agreement, the terms of which are unascertained or not established?

Such being the rule of law, the question arises, have the complainants in this case brought themselves within it? It is conceded the special contract set up in the bill, and which is now sought to be enforced, does not appear in any of the written instruments which were drawn up at the time the contract is claimed to have been made. This fact, of itself, is not without significance. Nor has any living witness testified to having been present at the making of any such contract, or to having otherwise obtained any personal knowledge of the existence of such a contract. On the contrary, appellee, the only living person who really does know whether such a contract was made or not, denies it, under oath, in the most positive terms,—and in this, so far as it relates to the occasion when the contract is claimed to have been made, he is fully corroborated by his mother.

Outside of certain supposed corroborative circumstances, the evidence relied on to sustain the bill, consists, mainly, of certain admissions alleged to have been made by appellee. The testimony of Alexander Long and Alexander D. Crawford, in this connection, is the most important, and about all that requires special notice. The following synopsis of it, taken from appellants' brief, we find substantially correct, and here insert it without alteration:

Alexander D. Crawford states: "I think it was in the fall of 1877 I was at his (appellee's) house or premises, and he told me that his grandfather, William Long, gave that farm to him for his father's share in his grandfather's estate. William P. Long told me his grandfather gave him the farm upon which he was living, as his share of his grandfather's estate. He said he was satisfied with what he had received as his share of his grandfather's estate. His mother (William P. Long's) was present."

Alexander Long testifies: "William R. Long asked me to go and notify William P. Long and his mother that the administrator was about to close up the estate, and if they, or either of them, had any interest in the division of the property or claim against the estate, then was the time to make it. I did tell both William P. Long and his mother what the administrator requested me to say to them. William P. Long said he had no interest in the matter,—that he had settled with William Long, and had given him a quitclaim deed to the balance of his property. On the day after this conversation with William P. and his mother, I told William R. Long what they said. William P. Long told me in that conversation, on the Grove farm, that he had received from his grandfather's estate what he was entitled to receive therefrom, and had taken it in the Grove farm, pursuant to the contract between his father, James Long, and his grandfather. William P. Long said to me he had received a deed to lands in Lee county, Illinois, from his grandfather, as his share of his grandfather's estate, receiving the Grove farm. He said when he received the deed he was to release all claim against the estate of William Long, *to whom he executed a quitclaim deed for that purpose.*"

Both these conversations are positively denied by William P. Long and his mother. But even without their denial we do not think this evidence is of that clear and satisfactory character to bring the case within the rule above indicated. So far as Crawford's testimony is concerned, nothing is perceived in it that even tends to prove such a contract as that set forth in the bill. It tends, rather, to establish a mere advancement of what was deemed by the parties appellee's share of his grandfather's estate. But this not having been declared by the one or acknowledged by the other *in writing,* as required by the statute, it can not be given effect as an advancement. The witness does not make the slightest reference to the agreement relied on, nor, indeed, to any agree-

ment at all. While the admissions testified to by Alexander Long differ from those sworn to by Crawford in this, that they show there was a contract of some kind between William Long and appellee, and that the conveyance of the land to the latter was made in pursuance of such contract, yet they fail to satisfactorily show its terms, or any breach of it, whatever it may have been, by appellee. On the contrary, it rather tends to show that he has already done just what was supposed to be required of him by the agreement. At all events, the whole matter is left in such doubt and uncertainty as to afford a complete answer to the present bill.

Viewing the case in the light of the admissions claimed to have been made to Alexander Long, all that can be made out of it is, that William Long made a conveyance of the land in question to his grandson, and the latter made a quitclaim deed to the former for certain other lands in which he had no beneficial interest, and that both conveyances were made in pursuance of an agreement and understanding between the parties. If appellee stipulated to do anything which he has not performed, or which was not accepted and understood by both parties to the transaction as performance, these admissions clearly fail to show it. Alexander Long expressly states, that appellee told him that the quitclaim deed was executed by appellee for the purpose of releasing all his claim against the estate of William Long. Conceding, for the purposes of the argument, that appellee made this statement, yet it is difficult to believe the quitclaim deed was made for such a purpose, unless we impute to the parties a degree of ignorance seldom to be met with, and hardly to be reconciled with the business experience of the parties to this transaction. To say that William Long, a practical business man, who had amassed a considerable fortune, and who was frequently making and receiving conveyances for land, did not know the effect of an ordinary quitclaim deed, is hardly justified by our knowledge of human affairs. But suppose the instru-

ment in question was executed under a misapprehension as to its legal effect, and that it is one of those mistakes of law which, in extreme cases, are relievable in a court of equity,— about which we express no opinion,—is the conveyance, in seeking such relief, to be wholly disregarded, just as if it had never been made? If the instrument does not correctly express the agreement of the parties, the proper course would have been to have it reformed. The present bill, however, seeks to accomplish nothing of this kind. It is not alleged in the bill that anything was inserted in the deed which ought not to be there, nor that anything has been omitted which ought to have been inserted, and yet evidence is offered to prove that this quitclaim for certain specifically described land was intended to operate as a release of all interest in the estate of the grantee, upon his decease, personal as well as real! Except where fraud or mistake has intervened, the legal effect of a solemn deed can not be thus assailed.

But this is not all. Learned counsel, in effect, at least, insist that this deed is, *per se,* evidence of the making of the contract sought to be enforced. We perceive nothing in it to justify such a conclusion. A deed can in no case be evidence of an antecedent agreement not indicated by the terms or contents of the deed. When a conveyance has been made between parties *sui juris,* it will be presumed, in the absence of anything to the contrary, there was an antecedent agreement to deliver just that kind of an instrument, and no other. Hence it is altogether illogical to assert, as is done here, that an ordinary quitclaim deed for a certain specifically described tract of land affords any evidence of an intention on the part of the grantor to release an expected inheritance from the grantee. This conclusion could not be reached by any recognized principle of reasoning, nor without doing the grossest violence to the terms of the instrument itself.

It is also supposed, the fact that appellee is characterized in this deed as grandson and heir of William Long is evidence

tending to show such a release was intended. This conclusion is not justified by the language used. The words used in thus characterizing appellee are in no sense uncertain or ambiguous. They are expressive, simply, of two relations which the grantor bore to the grantee, namely, that of grandson and prospective heir. This is all. Why these words were inserted in the deed is not stated, and presents quite a different question. If anything was intended beyond the solemn recognition of the relations specified, it is wholly a matter of conjecture. A number of theories might be suggested that would be equally as reasonable as the one urged by appellants, yet they, like that, would have nothing but conjecture to support them, and it would consequently be a useless consumption of time to do so.

As remotely bearing on the controlling question of fact under consideration, counsel for appellants introduced, upon the hearing, a considerable amount of testimony, for the purpose of showing the two hundred and forty-nine acre tract of land at the time of the conveyance was worth, in excess of the $4600 paid by appellee, as much, or more, than his share of the estate would be upon an equal division of it among the heirs. The whole of the evidence bearing on this question considered, we think counsel for appellants failed in this undertaking. We can not stop to go into detail, but suffice it to say, we are of opinion that the weight of evidence upon this branch of the case is with the appellee rather than the appellants. In short, we do not think the case made by the amended bill is sustained by the evidence, and it is therefore unnecessary to consider other questions discussed by counsel, for whatever our views or conclusions might be upon them, it could be of no avail to appellants, if they have failed, as we hold they have, to establish the case made by the bill.

If the section of the statute relating to advancements, above cited, was out of the way, and the question to be determined upon the proofs now before us was, whether the conveyance

of the two hundred and forty-nine acre tract of land was intended in part as an advancement to appellee, appellants, in our judgment, would have a much stronger case than they now have. But the statute is not out of the way, and can not be dispensed with, although it may result in defeating William Long's intentions in the partial distribution of his property among his descendants before his death. The law must be administered as we find it. An advancement which is not evidenced in the manner required by the statute, is, in legal effect, no advancement at all, however clearly it may appear it was so intended.

We are of opinion the circuit court did right in dismissing the bill, and it follows that its decree to that effect was properly affirmed by the Appellate Court.

*Judgment affirmed.*