EMELINE BARTMESS *et al.*

*v.*

TORRENCE I. FULLER *et al.*

*Opinion filed November 8, 1897.*

1. EVIDENCE—*advancement cannot be created by parol evidence.* Under section 7 of the act on descent (Rev. Stat. 1874, p. 418,) an advancement cannot be established by parol evidence, but, on the contrary, "the gift or grant must be expressed in writing as an advancement, or charged in writing by the intestate, or acknowledged in writing" by the donee or grantee.

2. SAME—*when cross-bill must be dismissed on account of variance.* A cross-bill in partition proceedings, alleging that the plaintiffs had already received their full share of the property under deeds in the nature of advancements, which they had accepted under an express agreement to release all further claims, must be dismissed where the evidence fails to show any agreement, and tends to establish the advancements by oral evidence alone.

WRIT OF ERROR to the Circuit Court of Crawford county; the Hon. S. Z. LANDES, Judge, presiding.

Daniel Fuller died intestate on February 26, 1895, leaving no widow, but leaving, as his only heirs-at-law, five children, to-wit: two sons, Nelson R. Fuller and Torrence I. Fuller, and three daughters, Rebecca Chiddix, Emeline Bartmess and Lydia A. Shaw. Prior to his death he

170—13

owned one hundred acres of land in Crawford county. On
February 22, 1894, he executed a conveyance of an undi-
vided one-fifth interest therein to his son, Nelson R. Ful-
ler. On February 26, 1894, Nelson R. Fuller conveyed this
undivided one-fifth interest to his brother, Torrence I.
Fuller. The deed from Daniel Fuller to Nelson R. Fuller
contained these words: "Be it known that this deed does
not take effect till my death. I retain control and pos-
session of said lands until my death." Because of these
words in the deed, or for some other reason, Torrence
claimed that the deed from his father to his brother, Nel-
son, was defective. Thereupon, on July 28, 1894, Daniel
Fuller executed a new conveyance to Torrence I. Fuller,
conveying an undivided two-fifths interest. This latter
deed was made for the purpose of correcting the sup-
posed defect in the former deed, and at the same time
conveyed an additional one-fifth interest.

The original bill in this case is a bill for partition, and
was filed by Torrence I. Fuller against his brother, Nel-
son, and his three sisters, and one Jones, holding a mort-
gage upon a part of the property. The bill alleges, that
complainant owns not only an undivided two-fifths inter-
est, conveyed to him by his father in his lifetime, but that
he also owns by descent one-fifth of the remaining three-
fifths of the premises, as heir of his father, thus claiming
to be the owner of an undivided thirteen twenty-fifths;
and that his brother and sisters are the owners, each of
an undivided three twenty-fifths, or twelve twenty-fifths
in all. The answer of the three daughters of Daniel Ful-
ler admits his death, and sets up, that said deeds were
made in pursuance of an agreement between Daniel Ful-
ler and his sons, Nelson and Torrence, by the terms of
which the two sons agreed to accept, and did accept, the
interests conveyed to them as their share and portion of
said premises, in lieu of their expectancy as heirs of their
father; and that the residue or remaining three-fifths
should descend to the other heirs of Daniel Fuller, free

from all claims of heirship by the two brothers; and that the deeds were made in reliance upon such agreement.

The three daughters also filed a cross-bill, setting up that Daniel Fuller in his lifetime conveyed to his two sons, each an undivided one-fifth interest, (Nelson having sold his one-fifth to his brother Torrence,) and that the sons agreed with their father to accept, and did accept, each his one-fifth interest, in full of their proportionate shares of the premises, and agreed to relinquish their claims as heirs in the residue of said premises; and that Torrence went into possession on the execution and delivery of the deed made on July 28, 1894, and has remained in possession and received the rents and profits of the premises. The prayer of the cross-bill is, that Nelson and Torrence be compelled to specifically perform the agreement, so made with their father, and carry the same into effect, and to account for the rents and the profits. The separate answers of the two sons contained a general denial of the allegations of the cross-bill.

The cause was referred to a master in chancery to take the testimony in the cause; and the master reported back the testimony taken by him. Upon the hearing, the complainant introduced in evidence the three deeds above described, and examined Torrence I. Fuller with reference to the same, and then rested. The defendants to the original bill who were complainants in the cross-bill then submitted the testimony, taken in their behalf before the master. After the introduction of the latter testimony Torrence I. Fuller, the complainant in the original bill, and Nelson R. Fuller, one of the defendants thereto, both being defendants in the cross-bill, moved to dismiss the cross-bill. This motion was allowed, and the court entered a decree, dismissing the cross-bill, and decreeing partition as prayed in the original bill. The present writ of error is sued out for the purpose of reviewing the decree thus entered.

BRADBURY & MACHATTON, and VALMORE PARKER, for plaintiffs in error.

CALLAHAN, JONES & LOWE, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The contention of the plaintiffs in error in this case, as set out in the cross-bill, is, that Torrence and Nelson Fuller, by the deeds executed to them by their father in his lifetime, received each a one-fifth interest in the one hundred acres of land owned by their father, which they would have received as heirs in case of the death of their father intestate without having made such deeds, in lieu of their respective shares as heirs in said premises, and under an agreement that they would release their interests in the remaining three-fifths thereof. The effect of the decree below was to give Torrence and Nelson each one-fifth of said three-fifths, in addition to the two-fifths conveyed to them before their father's death. The cross-bill proceeds upon the theory, not only that the deeds for the two-fifths interest were executed by the father to the sons as an equivalent for their expectant shares in the one hundred acres, but that there was an actual agreement between the father and the two sons, that the sons would accept, and did accept, the interests conveyed to them as their share and portion of said premises, and in lieu of their expectancy therein; and that they would release and relinquish all further claim therein, so that the residue, amounting to three-fifths, should descend to the plaintiffs in error free from any claim on the part of the two sons.

The evidence fails to show, that there was any such agreement made, as is set up by the plaintiffs in error in their answer to the original bill, and in the cross-bill filed by them. The evidence tends to show, that the deeds made to the two sons may have been intended by

the father as advancements to them of their shares in the premises. The cross-bill was dismissed on motion of the defendants in error, upon the ground that the allegations of the cross-bill and the proofs introduced thereunder did not agree. The allegations alleged an agreement, and the testimony tended to show advancements established only by oral admissions. In view of this want of correspondence between the allegations and the proofs, the cross-bill was properly dismissed. It is well settled, that a complainant must recover on the case made by his bill. He cannot be permitted to state one case in his bill, and make out a different case by his proofs. Allegations and proofs must correspond. Even though a good case may appear in the evidence, yet if it differs from the one stated in the bill, the bill will be dismissed. (*Adams* v. *Gill*, 158 Ill. 190, and cases cited).

There was here no legal advancement to the two sons, because there was no writing evidencing any such advancement. Section 7 of chapter 39 of the Revised Statutes in regard to descent is as follows: "No gift or grant shall be deemed to have been made in advancement unless so expressed in writing, or charged in writing, by the intestate, as an advancement, or acknowledged in writing by the child or other descendant." (2 Starr & Cur.— 2d ed.—p. 1432). The evidence here consists of proof of oral statements, made by Daniel Fuller and his son, Torrence Fuller. It is shown that, at various times, Daniel Fuller stated that he had given his sons each one-fifth of the premises, and that his daughters were to have each one-fifth thereof. Torrence Fuller also stated at various times, that it was the intention of his father that each of the children should have one-fifth of the premises. But we have held, that an advancement cannot be established by evidence of this character. Under section 7, as above quoted, an advancement "cannot be created by parol declarations or statements; but, on the other hand, in order to create a valid advancement, the gift or grant must be

expressed in writing as an advancement, or charged in writing by the intestate, or acknowledged in writing by the child or other descendant. This is the plain provision of the statute and it cannot be disregarded." (*Wilkinson* v. *Thomas*, 128 Ill. 363). None of the deeds above referred to disclose upon their faces anything to indicate, that the interests conveyed were intended as advancements. They contain no allusion to advancements, and it is not claimed that there was any other instrument or writing than these deeds, establishing any charge by the intestate, or acknowledgment by either of the defendants in error as an advancement. The same kind of testimony, consisting of admissions and oral declarations, was held to be insufficient to establish an advancement in the case of *Long* v. *Long*, 118 Ill. 638. But it is contended by plaintiffs in error, that, although the testimony was not sufficient to establish an advancement by the intestate within the statutory meaning of that term, yet that there was a parol agreement on the part of defendants in error to release their interests in the remaining three-fifths of the premises, and to accept the interests conveyed to them in full of their shares as heirs in said premises. The case of *Galbraith* v. *McLain*, 84 Ill. 379, is relied upon as sustaining the view, that a court of equity will enforce such a parol agreement, as is here set up in the cross-bill. In *Galbraith* v. *McLain*, *supra*, it was held, that, where a father executes a deed for a tract of land to one child, who accepts and takes possession of the same upon the express understanding and agreement, that it is in lieu of all claims such child may have in or to the residue of his father's estate upon his death, and that such child will release to the other children all his claim in expectancy to the residue of the estate, such contract is legal and binding, and will be enforced in equity. The trouble with the case made by the plaintiffs in error is, that they do not establish any such agreement as is here described. Their cross-bill is a bill for the specific performance of

an agreement. It is well settled, that, where such a bill is filed, the contract sought to be enforced "must be clear, certain and unambiguous in its terms, and must be either admitted by the pleadings or proved with a reasonable degree of certainty." (*Long* v. *Long, supra*). It was distinctly held in *Long* v. *Long, supra,* that testimony, showing admissions of the grantee in a deed, that he had received the interest therein described as his share of an estate, does not establish such an agreement as is described in the cross-bill.

We are inclined to agree with plaintiffs in error, that Daniel Fuller intended to convey to his sons the shares, which they would receive as his heirs-at-law at his death in the premises in question, and that they were not to receive any further interest therein after his death, but, however much we may be dissatisfied with the result which has been reached in this case, we are obliged to enforce the law as we find it. The language used in *Long* v. *Long, supra,* upon this subject is applicable here. In that case we said (p. 649): "If the section of the statute relating to advancements, above cited, was out of the way,   *   *   * appellants, in our judgment, would have a much stronger case than they now have. But the statute is not out of the way, and cannot be dispensed with, although it may result in defeating William Long's intentions in the partial distribution of his property among his descendants before his death. The law must be administered as we find it. An advancement, which is not evidenced in the manner required by the statute, is, in legal effect, no advancement at all, however clearly it may appear it was so intended."

For the reasons here stated, the decree of the circuit court is affirmed.　　　　　　　*Decree affirmed.*