ROSE SIMMONS, Appellee, *vs.* MARGERY ROSS, Appellant.

*Opinion filed October 27, 1915—Rehearing denied Dec. 14, 1915.*

CONTRACTS—*one child may release to another his claim in expectancy as to residue of parent's estate.* It is lawful for children to agree with each other to accept from their father certain tracts of land or sums of money as present gifts in lieu of any right or claim they may have in expectancy in the father's land, and if the agreement is carried out and the gifts accepted, respectively, by all the children but one, to whom the father neglected to make any deed, such one may enforce the agreement in equity as against the others, and the Statute of Frauds is not available as a defense.

APPEAL from the Circuit Court of Warren county; the Hon. ROBERT J. GRIER, Judge, presiding.

SAFFORD & GRAHAM, and J. W. CLENDENIN, for appellant.

E. P. WILLIAMS, and J. D. WELSH, (WILLIAMS, LAWRENCE, WELSH & GREEN, of counsel,) for appellee.

RALPH COWDEN, guardian *ad litem,* for Lillian Simmons.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This litigation involves the rightful ownership and title to fifty acres of land in Warren county. Appellee, Rose Simmons, filed her bill in the circuit court claiming she was the equitable owner of the land but that the legal title was in appellant, Margery Ross. The bill prayed a decree declaring title in appellee and setting aside the deed by which appellant claimed to own the land. The chancellor granted the relief prayed, and defendant below, Margery Ross, has prosecuted this appeal from that decree.

The facts and circumstances giving rise to this litigation are as follows: Alfred W. Simmons was the father of both appellant and appellee and five other children. Prior to the transactions out of which this litigation grows, six of said children had married and were living in homes of their own. Appellee, Rose Simmons, was living at home with her father and mother on the land involved in this litigation. She was born a cripple, being partially paralyzed on one side, and has remained in this unfortunate condition since her birth. Her mental activities were also hardly up to the normal. Alfred W. Simmons, the father, owned, besides the 75 acres of land here in controversy, 366 acres of other land. In 1901 he was eighty-one years of age, and he, his wife (quite an old lady) and appellee lived together on the land in controversy. The father desired to dispose of his land to his children during his lifetime. For that purpose he had the 366 acres divided into six parts by three neighbor-men selected for that purpose, who placed a valuation upon the total number of acres at $26,662.50. It was the desire of the father to divide that land among his six married children, reserving the 75 acres for a home for himself, wife, and appellee, which was to

become the appellee's at the death of her parents. For the purpose of making this settlement and distribution of land to his children Simmons called the six married children to meet at his home January 14, 1901, when the matter was fully discussed and plats examined of the division of the land into tracts and the valuation put upon them by the three men who had been selected for that purpose. The share of each of the six children in the 366 acres was $4443.75. The proposed distribution of the land was agreed to by the children after full discussion. The wife of Simmons was also present and agreed to the distribution on condition that appellee was to have the 75 acres at the death of the husband and herself, and upon this condition she agreed to sign the deeds to the other six children, releasing her right of dower in the 366 acres. Inquiry was made of the children by Simmons whether there was any objection to the proposed distribution, and no objection was made. Appellant preferred to take her share in money, and one of her sisters took the land appellant would have received by the distribution and paid her the money therefor, $4443.75. Deeds were then executed by Simmons and wife to the other five married children for the 366 acres. No deed was executed for the 75 acres to appellee. Mrs. Simmons died in about one year after this transaction, and Simmons and appellee continued to live on the land in controversy until March, 1911, during which time the appellee, with the assistance of an uncle, (her mother's brother, who lived with them most of the time,) did the housework for the family. The proof shows that notwithstanding her crippled condition appellee did the cooking, housekeeping, milking, churning, raising poultry, and other duties of a housekeeper, very well, being assisted, in part, by her uncle. No other help was kept to assist her. Appellant appears not to have been successful in the investment and management of the money she received for her interest in the land. She and appellee were not as congenial toward each other

as is ordinarily the case with sisters. From time to time
the father made appellant small gifts of personal property,
to which appellee objected and which caused some feeling
between her and the appellant. In March, 1911, Simmons
went to the house of the appellant and remained there un-
til some time in June following. It is quite apparent ap-
pellant exercised considerable influence over her father at
that time. He was then ninety years old and very feeble.
Appellee was left at the home place with the uncle when
her father went to appellant's house. Shortly afterwards
appellant called her brother J. H. Simmons by telephone
and told him appellee and her uncle ought to be taken away
from the home place, and stated that her father wanted
that done. J. H. Simmons went to his sister's house and
saw his father, who requested the son to sell off the per-
sonal property on the farm and take appellee some place to
board. This the son did against the objections of appellee.
Along in May, Alfred W. Simmons concluded he wanted to
go back to the farm, and so stated to his son J. H. Simmons.
The son proposed to him, if he wanted to do that, the chil-
dren would hire a family to live with and take care of him.
The father said he wanted appellant to live on the farm
with him; that she did not have anything and he wanted
to help her and leave her something when he died. The
son reminded his father of the agreement that appellee was
to have the 75 acres and that it would be objectionable to
the other children for him to fail to keep the agreement,
and proposed that if he wanted appellant to live on the
farm with and care for him the other children would pay
her whatever it was worth. This proposition was not ac-
cepted. Appellant said she would not undertake the care
of her father unless her pay for doing so was secured.
A few days before they moved back to the farm Alfred
W. Simmons executed a deed to appellant conveying her
50 acres of the 75 acres, reserving to himself a life estate
therein. At the same time he executed a deed to appellee

for 25 acres. On December 1, 1911, he executed a will, giving appellee $3000 and his sons Henry, David B., William M. and his daughter Mary Link each $20. To appellant he gave one-half of the residue of his estate and to the children of his deceased son the remainder of his estate. In June, 1911, the appellant's family and her father moved back to the home place, where they resided until the father's death, August 8, 1912.

The bill in this case was filed by appellee to set aside the deed to appellant and to invest the title in appellee and for an accounting of rents and profits. Before the bill was filed one of the sons of Alfred W. Simmons died, leaving a widow and two children, one of whom was a minor. They, together with the surviving children, were made parties defendant to the bill. The surviving children other than appellant answered the bill, admitting its allegations and that the appellee was entitled to the relief prayed. The widow and adult daughter of the deceased son were defaulted. The minor child of the deceased son answered by guardian *ad litem.* Appellant answered, denying the material allegations of the bill and setting up and relying upon the Statute of Frauds. The minor defendant, by her guardian *ad litem,* filed a cross-bill, admitting the agreement between Alfred W. Simmons and his children as to the distribution of the land, the receipt by the six married children of their shares, and that appellee was to have the 75 acres for her share at the death of her parents. The cross-bill alleges appellant took the value of her interest in money as her distributive share under an express agreement that it was to be in full of her share in the real estate of her father; that no transfer was ever made to the appellee, and that in fraud and violation of the agreement Alfred W. Simmons, after the death of his wife, conveyed 50 acres of the land to appellant. The cross-bill further alleges that the agreement whereby appellee was to get the 75 acres of land was not in writing and was void under the Statute of Frauds and

could not be enforced. The cross-bill prays the deed to appellant be set aside as fraudulent and that the 50 acres of land be distributed under the residuary clause of the will of Alfred W. Simmons. Upon a hearing a decree was entered setting aside the deed to appellant and vesting the title in appellee. The question of accounting was reserved for future determination.

The claim of the original bill is, that at the time of the distribution of the land, in 1901, it was agreed between Alfred W. Simmons and wife and their seven children that the share received at that time by each of the six children to whom the deeds were made or who received money in lieu of their share of land was to be, and was, accepted in lieu of any right or claim either of said children should have in expectancy in the real estate of their father; that while the deed was not then made to appellee, appellant and each of the other five children by said agreement released to the appellee all right and interest in and to the 75 acres. Appellant denies any such agreement was made, but the proof, in our opinion, overwhelmingly shows that it was made. The mother expressly stated at the time that she would not consent to the arrangement and execute the deeds to the 366 acres except upon the condition that appellee was to have the 75 acres upon the death of herself and husband. Her solicitude about the provision for appellee was because of her unfortunate crippled condition. While there is no direct proof of any express statement that the six married children agreed to these terms and conditions, they were the terms proposed by the parents to the children, and their father asked them if there was any objection, and none was made, but they accepted their respective shares without remonstrance or objection.

It is competent for a child to release to other children his claim in expectancy to the residue of an estate, and such agreement, when based upon a valuable consideration, is enforcible in equity. (*Galbraith* v. *McLain*, 84 Ill. 379;

*Longshore* v. *Longshore,* 200 id. 470; *Hudson* v. *Hudson,* 222 id. 527; *Bolin* v. *Bolin,* 245 id. 613.) It is very clear, under the law and the evidence, that appellant accepted the provision made for her by her parents with the agreement and understanding that it was to be in full of her share in all of her father's real estate, and that appellee was to have the 75 acres at her parents' death free and clear from all right or claim of any of her brothers and sisters therein. Appellee lived on the place with her father and mother until the latter's death, about a year after the distribution was made, and continued to live with and care for her father for nine years after her mother's death, and until, apparently upon the advice of appellant, she was put off the place against her will and not allowed again to return to it. If appellant was not directly responsible for this being done she at least consented to and approved of it, and as soon as her father had conveyed to her 50 acres of the land in which she had agreed and consented to release all interest to her unfortunate sister, she took her father back to the farm, where they lived together until the father's death.

Under the authority of *Dalby* v. *Maxfield,* 244 Ill. 214, and *Willis* v. *Zorger,* 258 id. 574, and cases cited therein, the defense of the Statute of Frauds cannot be permitted to enable appellant to deprive appellee of what she is justly entitled to; and we do not think the minor cross-complainant is in any better position to raise the question of the Statute of Frauds.

The decree of the circuit court is affirmed.

*Decree affirmed.*

Mr. Justice Craig took no part in the decision of this case.