# JOHN W. BARRETT

*v.*

## SARAH C. GEISINGER *et al.*

*Filed at Ottawa October 26, 1893.*

1. SPECIFIC PERFORMANCE—STATUTE OF FRAUDS—*proof of the contract—its character.* A contract which is sought to be specifically enforced must be clear, certain and unambiguous in its terms, and must be either admitted by the pleadings or proved with a reasonable degree of certainty. It is not sufficient to show that a contract of some kind exists between the parties, and that it has, in whole or in part, been performed by the complaining party, but all the material terms of the contract as alleged must be substantially proved or admitted.

2. In the matter of a contract to convey land, in order to take a case out of the Statute of Frauds, the contract must be clear and certain in its terms, and established by testimony of an undoubted character, which is clear, definite and unequivocal. It must leave no room for reasonable doubt.

3. SAME—*part performance to take case out of the Statute of Frauds.* The equitable rule that where there has been a partial performance the Statute of Frauds will not be held to apply, is adopted for the prevention of frauds, and when a purchaser of land, under an oral contract, has entered into possession under the contract, and paid the purchase money, and made valuable and permanent improvements, so that a refusal to perform the contract would operate as a fraud on him, the vendor will be held to be estopped to avail himself of the provisions of the statute, and the contract will be specifically enforced.

4. The basis upon which the doctrine of partial performance rests is, that where a verbal contract has been made, and one party has knowingly aided or permitted the other to go on and do acts in part performance, in full reliance upon such agreement as a valid and binding contract, and which would not have been done without the agreement, and are of such nature as to change the relations of the parties and to prevent a restoration of the premises to their former condition, or an adequate compensation for the loss by a judgment at law for damages, then it would be a virtual fraud in the first party to interpose the Statute of Frauds as a bar to the completion of the contract, and thus secure to himself all the benefits of the acts already done in part performance, while the other party would not only lose the advantage of the contract, but would be left without adequate remedy for its failure, or for compensation for what he had done in

pursuance of it. To prevent the success of such a fraud, equity interposes under those circumstances, and will compel the entire completion of the contract by decreeing its specific performance.

5. But where the vendee seeking the specific performance of an oral agreement to convey is also the tenant of the party promising to convey, and is amply compensated for the improvements made by him upon the premises in reduced rents, and such improvements are necessary to the tenant's beneficial enjoyment of his term, a court of equity will not interpose to prevent the vendor from setting up the Statute of Frauds.

6. While a son was in the possession of an eighty-acre tract of land belonging to his father, it was agreed by them that if the son should continue to occupy and work the land during the father's life, and pay him a certain sum annually, the son should become the owner, his father agreeing to devise the land to him. After this alleged agreement the son erected one or more buildings, and set out an orchard on the land, and set out some hedges, and dug two wells, costing but a small sum of money. The father then deeded the son six acres of the land, when the latter removed the buildings and orchard to that part of the premises, and afterward erected a dwelling house thereon and made other improvements on the same. The son was more than compensated for the improvements on the remaining seventy-four acres by the use of the same, after deducting the annual payments made to his father: *Held*, that the refusal of the father to specifically perform the contract could not operate as a fraud on the son, and that the Statute of Frauds, when pleaded, was a bar to a bill by the son for a specific performance of the contract.

7. In such case, the conveyance by the father of the remaining seventy-four acres of land while the son was in the open possession under a lease for the father's life, passed to his grantee only the reversion, which could work no prejudice of the son's rights in the premises, and that for any attempted interference with his rights he had an ample remedy at law.

8. In such case, if the father had agreed to devise the seventy-four acres to the children of his son, his subsequent deed would render nugatory his devise to the son's children; but this was not a matter of which the son could complain. The loss was that of his children, and in the absence of their being made parties, their rights could not be protected.

WRIT OF ERROR to the Circuit Court of Lee county; the Hon. JOHN D. CRABTREE, Judge, presiding.

This was a bill in chancery, brought by John W. Barrett against John Barrett and Sarah Geisinger, to, cancel certain conveyances from John Barrett to Sarah Geisinger, and to restrain him from making further conveyances or devises of the land in controversy, and also to establish the complainant's title thereto. John W. Barrett is the son and Sarah Geisinger is the daughter of John Barrett, and they are his only surviving children.

· The bill alleges that, in 1866, John Barrett was the owner of a certain tract of land in Lee county, containing eighty acres, and that while such owner, he agreed with the complainant, who was then living on the land, that if the complainant would continue to occupy and work it as a farm during his father's lifetime, and would also during that time pay his father $75 per year, and furnish him one-half of the pork and flour required for the use of himself and his wife, and one-half the feed required to keep one horse, then the complainant should, at his father's death, become the owner of the land, his father to make over the title of the land to the complainant by will; that in consideration of such promise and undertaking, the complainant has from that date hitherto continued to remain on the premises and to occupy the same as his home, and is now in such occupancy; that from the date of the agreement up to June 8, 1889, the complainant paid his father $75 annually, and furnished him with pork, flour and horse-feed in accordance with the agreement; that soon after the agreement, John Barrett made a will devising the land to the complainant in accordance therewith; that afterward, but at what date the complainant can not state, he made another will also devising the land to the complainant; that on or about February 22, 1887, John Barrett made still another will in which he devised the land to the complainant's children, that being the last will John Barrett has made; that in May or June, 1889, the complainant was informed that his father was threatening to sell and convey the premises in disregard of

the complainant's rights, and being greatly exercised thereby, an altercation ensued between him and his father, which resulted in a settlement, made June 8, 1889, by which it was agreed that the will of February 22, 1887, should remain the last will and testament of John Barrett up to the date of his death, and that instead of the $75 and the pork, flour and feed agreed to be contributed by the complainant under the first agreement, the complainant should pay his father $50 July 1, 1890, and $50 on the first day of each December and July during the lifetime of his father; that the complainant has made all payments under the settlement as they became due, and will pay those to become due, at maturity.

The bill further alleges that the complainant, desiring to erect a new dwelling house on the six acres in the south-west corner of the tract, his father conveyed the six acres to him for that purpose in 1868; that after the agreement of 1866, the complainant made and has continued to make extensive improvements on the premises outside of the six acres, in reliance upon the execution of the agreement in good faith by his father, but that wholly disregarding his obligation, and for the purpose of throwing a cloud upon the complainant's title, and of subjecting him to the expense of removing the same, John Barrett, in September, 1890, for the nominal consideration of $2, conveyed the premises, exclusive of the six acres, to his daughter, Sarah Geisinger; that no consideration whatever was paid for the conveyance, and that it was made with the intent to defraud the complainant out of his land, and that Sarah Geisinger, well knowing the complainant's rights, conspired with John Barrett to defraud him.

The bill prays that the conveyances to Sarah Geisinger be annulled, and that John Barrett be enjoined and restrained, so long as the complainant shall occupy the premises and make the payments required by the settlement of June 8, 1889, from conveying the premises to any person except the complainant, and from devising the same to any person or

persons other than the complainant and his children, and from incumbering or asserting ownership over the same, and that the complainant be decreed to be the owner of the premises, subject only to be divested by his failure to occupy them or to make the payments required by the settlement, and also a general prayer for relief.

John Barrett answered, admitting the ownership of the land, but denying the agreement of 1866, or that the complainant had occupied the premises under such agreement, or that he had made the payments or furnished the provisions and feed as alleged in the bill, but averring his failure to do so. The answer admits making the will of February 22, 1887, devising the tract, excepting the six acres, to the complainant's children, and admits the previous wills devising the land to the complainant, but denies that either will was made in pursuance of any agreement with the complainant. The answer sets forth the written agreement of June 8, 1889, the first part of which consists of a formal lease of the seventy-four acres by John Barrett to the complainant, from August 20, 1889, for and during the natural life of the lessor, the complainant to pay as rent $100 per year, $50 being payable December 1, 1889, $50 July 1, 1890, and $50 on the first day of each succeeding December and July, during the residue of the term, the complainant to pay taxes, and to keep the premises in reasonable repair. The instrument then proceeds as follows:

"And it is mutually agreed by and between the parties to this lease, that the party of the second part enters into this lease in consideration of the provisions of the will of party of the first part, bearing date February 22, 1887, and now in the hands of W. I. Guffin, of Compton, Ill., by which provisions said premises are devised to the children of the party of the second part; and it is further agreed that said will shall not be changed in any manner, nor for any purpose whatever, but shall remain the last will and testament of the said party of the first part to the day of his death, and in case said party

of the first part shall·violate this clause, then all rent paid under the terms of this lease shall be refunded to the party of the second part, his heirs or personal representatives. And it is further mutually understood and agreed that said party of the second part claims to be the equitable owner of said premises, subject to contribution to the support, as heretofore, of the party of the first part; that said party of the second part executes this lease for the purpose of securing the payment of the sum of $100 per year, as above set forth, and for the further consideration expressed in the preceding clause. And it is further expressly agreed that neither party to this lease waives any right to or claim in the premises aforementioned, existing at the time of the signing of this instrument."

The answer admits the payments under the lease, but avers that the complainant had made such unreasonable and inequitable demands in respect thereto, and had exhibited such disrespect for his father in many ways, and treated him so unkindly, as to deprive himself of all claim upon his father's bounty. It admits the conveyance of the premises to Sarah · Geisinger, but denies that the conveyance was for a nominal consideration, or intended to defraud the complainant. It also denies that the complainant has made extensive improvements upon the premises, outside of the six acres, his improvements being confined to the building of fences and the planting and cultivating of hedges, worth not more than $150, and that he had been more than compensated for his improvements by the use of the land. By an amendment to his answer, John Barrett sets up and pleads the Statute of Frauds.

Sarah Geisinger answered, admitting the conveyances to her, and alleging that the consideration of such conveyances was an agreement on her part to pay John Barrett $200 per year so long as he and his wife should live, and on the death of either, to pay the survivor $100 per year during life, the payments to begin from September 1, 1889. The answer denies a fraudulent purpose on her part, and avers that she had

no notice, until the filing of the bill, that the complainant had any interest in the land in question except as tenant; also that John Barrett and wife are over eighty years of age, and have no one to provide and care for them but her; that she furnishes a home and cares for them, and will do so while they live.

Replications were duly filed, and at the hearing, which was had on pleadings and proofs, the court found the equities of the case to be with the defendants, and entered a decree dismissing the bill at the costs of the complainant for want of equity. To reverse that decree, the complainant now brings the record to this court by writ of error. Since the entry of the decree John Barrett has died, and his administrator has been substituted in his stead as defendant in error.

Mr. A. C. BARDWELL, for the plaintiff in error:

The general rule is, that "a parol contract to convey will not be decreed in a court of equity unless it appears to be certain and definite in its terms, and established by evidence free from doubt or suspicion." *Worth* v. *Worth*, 84 Ill. 442; *Wood* v. *Thornly*, 58 id. 470; *Bailey* v. *Edmunds*, 64 id. 125; *Bright* v. *Bright*, 41 id. 97; *Padfield* v. *Padfield*, 92 id. 198; *Shaw* v. *Schoonover*, 130 id. 448; *Langston* v. *Bates*, 84 id. 524; *Bohanan* v. *Bohanan*, 96 id. 591; *Jefferson* v. *Jefferson*, id. 559; *Clark* v. *Clark*, 122 id. 388; *McDowell* v. *Lucas*, 97 id. 489.

A promise of a gift by father to son, when the promise has been acted upon, and has induced the expenditure of money and the making of permanent and valuable improvements, with the knowledge and consent of the promisor, has been enforced, in equity, on the ground that it would be inequitable to permit the promisor to retract or refuse to execute the agreement. *Kurtz* v. *Hibner*, 55 Ill. 414; *Wood* v. *Thornly*, 58 id. 468; *Langston* v. *Bates*, 84 id. 524; *Bright* v. *Bright*, 41 id. 97.

Enforcement of parol gift is never based on the donor's promise, but upon the donee's act relying on the promise, and the virtual fraud that would follow if the property should not be conveyed to him. Pomeroy on Specific Per. (1st ed.) sec. 130, note 2; Fry on Specific Per. (3d ed.) sec. 558.

When a verbal contract has been made, and one party has knowingly aided or permitted the other to go on and do acts in part performance of the agreement, acts done in full reliance upon such agreement as a valid and binding contract, and which would not have been done without the agreement, and which are of such a nature as to change the relations of the parties and to prevent a restoration to their former condition, and an adequate compensation for the loss by a legal judgment for damages, then it would be a virtual fraud in the first party to interpose the Statute of Frauds as a bar to a completion of the contract, and thus to secure for himself all the benefits of the acts already done in part performance, while the other party would not only lose all advantage from the bargain, but would be left without adequate remedy for its failure, or compensation for what he had done in pursuance of it. Pomeroy on Specific Per. (1st ed.) sec. 104.

Complainant's occupancy of the land, and his expenditures, constituted sufficient part performance to take the case out of the Statute of Frauds. Pomeroy on Specific Per. sec. 127; *Bohanan* v. *Bohanan*, 96 Ill. 591; *Hull* v. *Peer*, 27 id. 312; *Smith* v. *Yocum*, 110 id. 142; *Van Epps* v. *Clock*, 7 N. Y. 21; *Irwin* v. *Dyke*, 114 Ill. 302; *Warren* v. *Warren*, 105 id. 568.

As to character of improvements necessary to render them "permanent" and valuable, see *Kaufman* v. *Cook*, 114 Ill. 11; *Hull* v. *Peer*, 27 id. 312; *Van Epps* v. *Clock*, 7 N. Y. 21.

Complainant was to pay a certain amount and furnish certain provisions yearly. He was therefore a purchaser for value, and not a donee. *Bohanan* v. *Bohanan*, 96 Ill. 591; *Bright* v. *Bright*, 41 id. 97; *McDowell* v. *Lucas*, 97 id. 463; *Kurtz* v. *Hibner*, 55 id. 514.

Refunding rent in pursuance of the provision of lease and agreement of 1887 does not relieve defendants from the covenants therein. Bishop on Contracts, sec. 1454; *Plunkett* v. *Methodist Society*, 3 Cush. 561; *Ensign* v. *Kellogg*, 4 Pick. 1; *Fisher* v. *Shaw*, 42 Me. 32; *Hull* v. *Sturtevant*, 46 id. 34; Fry on Specific Per. (3d ed.) secs. 117-120; 1 Story's Eq. Jur. 33, secs. 715, 751.

It is entirely competent for a person to make a valid agreement binding himself to make a particular disposition of his property by will. Such contracts will be enforced, and conveyances in violation of the covenant will be set aside. Fry on Specific Per. (3d ed.) 105; 3 Parsons on Contracts, 406; 1 Story's Eq. Jur. sec. 382; *Van Duyne* v. *Vreeland*, 12 N. J. Eq. 142; *Pflugar* v. *Pultz*, 42 id. 440; *Schult* v. *Mis. Society*, 41 id. 115.

Where one party to a contract undertakes to annul it without the consent of the other, such act does not impair its obligation. It can always be enforced *People* v. *Supervisors*, 47 Ill. 256; *Myers* v. *Gross*, 59 id. 436.

It is a general proposition, that where clauses are repugnant and incompatible, the earlier one prevails, in deeds and other instruments *inter vivos*, if the inconsistency be not so great as to avoid the instrument for uncertainty. 2 Parsons on Contracts, (6th ed.) 513.

Messrs. Dixon & Bethea, for the defendants in error:

Under the alleged agreement of 1866 plaintiff has no right to specific performance. The Statute of Frauds was pleaded, and there was not sufficient part performance.

In this kind of a case specific performance will not be granted unless its refusal will assist in perpetrating a fraud on the complainant. 1 Story's Eq. Jur. secs. 759, 769; Waterman on Specific Per. sec. 260; 5 Ency. of Law, 317, note; Fry on Specific Per. 283, 555, 557; *Mason* v. *Bair*, 33 Ill. 194; *Stone* v. *Pratt*, 25 id. 20; *Rhodes* v. *Rhodes*, 3 Sandf. Ch. 279.

Specific performance should not be granted in this case, because it would be compelling an old man to part with his means of support in his last years, without consideration. That, a court of equity will not do. 1 Story's Eq. Jur. sec. 769; Waterman on Specific Per. secs. 260, 265; Pomeroy's Eq. Jur. sec. 1405, note 3.

Specific performance can not be granted, because the proof is not clear and unequivocal. *Wallace* v. *Rappleye*, 103 Ill. 229; *Langston* v. *Bates*, 84 id. 534; *Galloway* v. *Garland*, 104 id. 275; *Cassell* v. *Cassell*, 104 id. 361; *Shaw* v. *Schoonover*, 130 id. 448; *Bailey* v. *Edmunds*, 64 id. 125; *Clark* v. *Clark*, 122 id. 388; *Long* v. *Long*, 118 id. 638; *Berry* v. *Hartzell*, 91 Mo. 132; 5 Ency. of Law, 313, 317; Browne on Statute of Frauds, sec. 492; 1 Story's Eq. Jur. sec. 764; Waterman on Specific Per. secs. 286, 291, 265; *Woods* v. *Evans*, 113 Ill. 186.

It does not appear that possession was taken under this alleged contract. Plaintiff had possession before it was made, under a different contract. This was not enough. Browne on Statute of Frauds, secs. 476, 477; *Pickerell* v. *Morss*, 97 Ill. 220; *Kaufman* v. *Cook*, 114 id. 11; *Morrison* v. *Herrick*, 130 id. 361.

This alleged contract of 1866 can not be enforced, because plaintiff received far more from the land than he put upon it. He paid only about $100 a year and $40 in taxes, in addition to the $200 for fences, etc., while the rental value of the land was at least $250 a year. He has not been injured, but, on the other hand, has been benefited by the arrangement. Browne on Statute of Frauds, sec. 490; Pomeroy on Specific Per. sec. 131; Waterman on Specific Per. sec. 281; 3 Parsons on Contracts, 392; *Burns* v. *Doggett*, 141 Mass. 368; *Wood* v. *Thornly*, 53 Ill. 470; *Bailey* v. *Edmunds*, 64 id. 128; *Worth* v. *Worth*, 84 id. 442; *Padfield* v. *Padfield*, 92 id. 203; *Cassell* v. *Cassell*, 104 id. 363; *Morrison* v. *Herrick*, 130 id. 631; *Clark* v. *Clark*, 122 id. 393.

The lease and agreement made on June 8, 1889, do not entitle plaintiff to relief, because the bill does not set forth any claim based upon that lease. Before that question can be passed upon, the children of John W. Barrett must be made parties. They are not parties, and that lease, if it provides for anything, provides that said children shall be beneficiaries under the will of John Barrett. They are necessary parties.

The lease provides, that in case of a failure to fulfill its terms as to the will, John Barrett shall refund the rent. That has been done. Plaintiff has no right to specific performance. 1 Sutherland on Damages, 504, *et seq.;* Fry on Specific Per. 55, 59, note 1, p. 55.

The last clause of the lease expressly provides that neither party releases any claim to the land in question.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

. The case made by the bill rests in part upon the oral agreement between John W. Barrett, the complainant, and John Barrett his father, alleged to have been entered into in the year 1866, and in part upon the written lease executed by John Barrett to the complainant, bearing date June 8, 1889. The questions upon which the decision of the case must primarily and mainly rest relate to the oral agreement.

At the time that agreement is alleged to have been entered into, the complainant was, and for some time prior thereto had been, in possession of the eighty acre tract of land in question, as tenant of his father, or under some other arrangement with him, and the allegations of the bill are, that while he was so in possession, it was agreed between him and his father, that if he would continue to occupy and work the land as a farm, during his father's lifetime, and pay his father $75 per year, and furnish him one-half of the pork and flour required for the use of himself and wife, and one-half of the feed required to keep one horse, the complainant should, at

his father's death, become the owner of the land, his father agreeing to transfer the title to him by devise.

The bill, so far as it rests upon that agreement, is in the nature of a bill for specific performance. The complainant's title to that species of relief is contested upon a number of grounds, only a part of which need be considered. It is claimed, in the first place, that the agreement and its terms are not sufficiently proved to justify specific performance.

It is not claimed that any witness other than the complainant and his father was present at the time the agreement is alleged to have been made. They both testify, and their testimony is directly in conflict. The complainant testifies to an agreement substantially of the terms alleged in his bill, while his father testifies that no such agreement was made. It should be noticed that the complainant, in his testimony, attempts to relate a conversation, of which no memorandum was made, and which took place about twenty-five years prior to the time his testimony was given, and as to the details of which he is compelled to rely solely upon his own unaided recollection. All human experience demonstrates the unreliability of testimony of this character. However honest the intention of the witness may be to repeat the language used in a conversation had at so remote a period, or even to give the substance of the language used, the well known infirmities of human memory are such, as to throw serious and substantial doubt upon the accuracy of testimony of that character. When the further consideration is added that the witness is deeply interested in the event of the suit, it is manifest that his testimony must be received with a very considerable degree of caution.

In corroboration of his testimony, the complainant introduced several witnesses who testified to conversations which they claim to have had with John Barrett, most of them many years ago, in which Barrett made admissions and statements of an agreement, by which complainant was to have the land

in question at his death, and setting forth, with varying degrees of particularity the terms and conditions of the agreement. None of these witnesses, however, attempt to state the various terms of the agreement as alleged in the bill, even in substance. Possibly, if the question to be determined had been simply whether or not an agreement of some kind by which the complainant was to have the land at his father's death had been entered into between them, this testimony would have justified a decision of that question in the affirmative. But whether it proved the particular agreement alleged, with all of its terms, is another matter, especially in view of the rule as to the strength and clearness of the proof required to warrant a decree awarding specific performance of an oral contract for the sale of land.

The rule is well settled, that a contract which is sought to be specifically enforced must be clear, certain and unambiguous in its terms, and must either be admitted by the pleadings or proved with a reasonable degree of certainty. As was said in *Long* v. *Long*, 118 Ill. 638 : "It is not sufficient, within the rule, to show that a contract of some kind exists between the parties, and that it has, in whole or in part, been performed by the complaining party, but all the material terms of the contract must be satisfactorily proved or admitted." In *Langston* v. *Bates*, 84 Ill. 524, in discussing the same question, it was said : "In order to take a case out of the operation of the Statute of Frauds, the authorities all agree, that a contract to convey should be clear and certain in its terms, and established by testimony of an undoubted character, which is clear, definite and unequivocal." So in *Semmes* v. *Worthington*, 38 Md., it was said that in such case, "the proof must be clear and explicit, leaving no room for reasonable doubt;" and in *Purcell* v. *Miner*, 4 Wall. 517, it is said that the complainant "should be held rigidly to full, satisfactory and indubitable proof." See also, *Wallace* v. *Rappleye*, 103 Ill. 248; *Worth* v. *Worth*, 84 id. 442; Waterman on Specif. Perform.

secs. 291, 265. Applying this rule, we are of the opinion that the evidence fails to establish the agreement alleged in the bill and its terms, with that clearness and certainty which is necessary to entitle the complainant to its specific enforcement.

But even if the agreement were sufficiently proved, we are of the opinion that the complainant has failed to prove such acts of part performance as are sufficient in equity, to take the case out of the operation of the statute. The equitable rule that where there has been a partial performance, the statute will not be held to apply, is adopted for the same purpose for which the statute itself was enacted, viz., the prevention of frauds. Courts of equity have declined to allow a statute which was passed for that purpose to be so enforced as to defeat its own object, and it is therefore held by those courts, that where a purchaser of land under an oral contract, has entered into possession under his contract, and has paid the purchase money, and made valuable and permanent improvements, so that a refusal to specifically perform the contract would operate as a fraud upon him, the vendor will be held to be estopped to avail himself of the provisions of the statute, and the contract will be specifically enforced.

The basis upon which the doctrine of partial performance rests is, that when a verbal contract has been made, and one party has knowingly aided or permitted the other to go on and do acts in part performance of the agreement, in full reliance upon such agreement as a valid and binding contract, and which would not have been done without the agreement, and are of such nature as to change the relations of the parties, and to prevent a restoration to their former condition, or an adequate compensation for the loss by a judgment at law for damages, then it would be a virtual fraud in the first party to interpose the Statute of Frauds as a bar to the completion of the contract, and thus secure for himself all the benefits of the acts already done in part performance, while the other

party would not only lose all advantage from the bargain, but would be left without adequate remedy for its failure, or compensation for what he had done in pursuance of it. To prevent the success of such a palpable fraud, equity interposes under these circumstances, and compels the entire completion of the contract, by decreeing its specific execution. Pomeroy on Specif. Perform. sec. 104.

The evidence shows that the complainant, after the date of the alleged contract, erected one or more farm buildings and set out an orchard on the land. He also set out and has since cultivated some hedges to serve as fences on the land, and has dug two wells of no great depth, and costing relatively a small sum of money. When his father deeded to him the six acres, he removed the building or buildings and orchard to that part of the tract, and afterwards erected his dwelling house and other improvements on the six acres. The only improvements of a permanent character left on the seventy-four acres are the hedges and the two wells, costing in all, according to the evidence, from $200 to $400.

It may well be supposed that the hedges for purposes of inclosure, and the wells to supply water to domestic animals, were only such improvements as good husbandry required, and were only such as were necessary to the proper use and enjoyment of the land for the time being. But however that may be, the evidence is clear that the complainant has been much more than compensated for his expenditures in making those improvements by the use of the land, even after deducting the annual payments made to his father. It can hardly be seen then how the refusal to specifically perform the contract can operate as a fraud upon him.

It is undoubtedly true that the complainant has expended a considerable sum of money in erecting a dwelling house and in placing other improvements on the six acres of which he has the title, and it is insisted that, as the six acres form a part of the farm, and the improvements were placed upon it

with reference to their use in connection with the remaining
seventy-four acres, that they should have the same effect as
part performance as would be given to them if they had been
placed upon any other part of the land.   This contention, in
our opinion, has no force.   Even if the contract as to the
seventy-four acres is not specifically enforced, the complain-
ant is not deprived of his improvements.   He still has them,
and if they are rendered less valuable when detached from the
residue of the farm, the loss which the complainant will thus
suffer will clearly be *damnum absque injuria,* and can not be
made a ground for equitable relief.   At any rate, it is suffi-
cient to say that no authority is cited for this extension of
the doctrine of part performance, and we are disinclined to
adopt it.

Our conclusion then is, that the complainant is not entitled
to a specific enforcement of the oral contract alleged to have
been entered into in the year 1866, and that his only title to
relief in this suit must depend upon the provisions of the con-
tract of June 8, 1889.   By that contract, the complainant
became a tenant of the land during the life of his father, sub-
ject to the payment of certain rents, the payment of taxes,
and keeping the fences in reasonable repair.   The instrument
also contains a recital that the complainant claims to be the
equitable owner of the land, subject to a contribution to his
father's support, a claim which the other party to the instru-
ment in no way admits, and it is declared that the complain-
ant executes the instrument for the purpose of securing the
payment of the $100 per annum therein provided for, and in
consideration of the agreement therein contained that his
father's will then in existence, devising the land to the com-
plainant's children, should not be changed, but should remain
his last will and testament down to the time of his death, and
it was agreed that neither party to the lease waived any right
to or claim in the premises existing at the time of the execu-
tion of the instrument.   It may be admitted, in view of these

8—148 ILL.

provisions, that if the complainant were able to establish an equitable title to the land at and prior to the date of the lease, the acceptance of the lease could not have been invoked as an estoppel against the assertion by the complainant of such equitable title, and these provisions were doubtless inserted in the lease for the purpose of preventing the operation of the lease as an estoppel. But as the complainant has failed to establish any equitable title to or ownership of the premises, it is difficult to see how he can take anything by virtue of these precautionary provisions.

It can not be seen that the conveyances of the seventy-four acres by John Barrett to Sarah Geisinger have in any way interfered with the complainant's tenancy, or threaten to impair his rights in such way as to entitle him to equitable relief. He was in open, notorious and visible possession as tenant, and such possession was of itself notice to the grantee of his tenancy, and any title she took was manifestly subject thereto. The effect of the deeds, as against him, was merely to convey to Mrs. Geisinger the reversion, and the conveyance of the reversion can not ordinarily work any prejudice to the rights of the tenant in possession of the particular estate. There is no allegation nor proof that Mrs. Geisinger had either attempted or threatened to interfere with the complainant's tenancy, and even if she had, the matters involved would be such as might be remedied and adjusted at law, and would not therefore call for the interposition of a court of equity.

It is probably true that the conveyances to Mrs. Geisinger, if sustained, will render nugatory those provisions of the will of John Barrett by which the premises in question were devised to the complainant's children, and that those children, now that their grandfather is dead, are thereby deprived of the benefit of the devise which the complainant sought to secure to them by the provisions of the contract. But that is a matter in respect to which the complainant's children are the proper parties to complain. The loss is theirs and not the

complainant's. If any right to enforce the contract in that behalf exists, and as to that we express no opinion, that right is in them, and can not be enforced in their absence, and even if the complainant is, because of the fact of his being a party to the contract a proper party to a bill to enforce its provisions in relation to the will, it is clear that his children are also necessary parties, and that in their absence, no decree involving their rights could properly be rendered. As neither they, nor any parties authorized to represent them were before the court, the only decree, so far as this branch of the case was concerned, that could be rendered, was a decree dismissing the bill.

After carefully considering the evidence, we are of the opinion that the Circuit Court reached the correct conclusion, and its decree will therefore be affirmed.

*Decree affirmed.*