CHARLES I. BARRETT *et al.*

*v.*

SARAH C. GEISINGER *et al.*

*Opinion filed April 17, 1899.*

1. CONTRACTS—*contract to make will in particular manner must be equitable.* Equity will not grant specific performance of a contract to make a will in a particular manner if the contract is unconscionable, inequitable or unjust, or not founded upon fair consideration.

2. SAME—*contract to make particular will must be absolute in its terms.* Specific performance of a contract to make a will in a particular manner cannot be enforced where the contract is in the alternative either to make the will or pay a sum of money.

3. SAME—*contract construed as not authorizing specific performance.* A contract evidenced by a lease from father to son, whereby the latter gains a desirable leasehold at much less than its value, which provides that the lessor's will devising the property to the lessee's children shall not be changed, but which further provides that in case the lessor violates its provisions then all rents paid thereunder shall be refunded, and that neither party "waives any right or claim on the premises" existing at the signing of the lease, is not capable of specific enforcement by the lessee's children.

APPEAL from the Circuit Court of Lee county; the Hon. J. C. GARVER, Judge, presiding.

CHARLES B. MORRISON, for appellants:

Contracts relating to the making of wills and expectancies are valid, and may be enforced. A man may validly bind himself to make a will in a particular way, and such a contract may be sued upon or enforced in what is equivalent to specific performance proceedings. *Colby* v. *Colby,* 30 N. Y. Sup. 677; Waterman on Specific Perf. sec. 41; *Kershaw* v. *Kershaw,* 102 Ill. 307; Wald's Pollock on Contracts, 310; *Bollman* v. *Overall,* 2 So. Rep. 624; *Parsons* v. *Ely,* 45 Ill. 232; *Simpson* v. *Simpson,* 114 id. 603; *Crum* v. *Sawyer,* 132 id. 443; *Newton* v. *Newton,* 46 Minn. 33; *Cuddy* v. *Brown,* 78 Ill. 415; 3 Parsons on Contracts, 406; 2 Pingree on Real Prop. 1531, 1532; *Hale* v. *Hale,* 90 Va. 728; *Kofka* v. *Rosiky,* 41 Neb.

328; *Lobdell* v. *Lobdell*, 36 N. Y. 327; *Parsell* v. *Stryker*, 41 id.
480; Fry on Specific Perf. sec. 223; *Galbraith* v. *McLain*, 84
Ill. 379; *Emery* v. *Darling*, 33 N. E. Rep. 715; *Kutsell* v. *Hill-man*, 30 Atl. Rep. 535; *Smith* v. *Pierce*, 65 Vt. 200; Bishop on
Contracts, 224, 1279; *Johnson* v. *Hubbell*, 10 N. J. Eq. 332;.
*Young* v. *Young*, 45 id. 27; *Brady* v. *Smith*, 28 N. Y. Sup. 776.

Equity looks to the substance and not to the form of
the contract.　　*Otis* v. *Beckwith*, 49 Ill. 135; *Massey* v. *Hunt-ington*, 118 id. 95; 2 Story's Eq. secs. 790, 791; 3 Parsons
on Contracts, 355-357; *Lyman* v. *Gedney*, 114 Ill. 388; Fry
on Specific Perf. 84; 1 Pomeroy's Eq. sec. 378; Tiedeman's
Eq. sec. 18; *Badgley* v. *Votrain*, 68 Ill. 25; *Padfield* v. *Padfield*,
72 id. 326.

Equity looks upon that as done which ought to be
done, and one who has entered into a valid contract for
land is regarded as the owner of it.　　3 Parsons on Con-tracts, 355-357, 311; 1 Pomeroy's Eq. sec. 370; 2 Story's
Eq. secs. 790, 791; Tiedeman's Eq. sec. 20; *Miller* v. *Miers*,
155 Ill. 284; Bispham's Eq. sec. 44.

A will or devise is a conveyance of property.　　4 Am.
& Eng. Ency. of Law, 133, note; 4 Kent's Com. 501; An-derson's Law Dic. 1115; Bouvier's Law Dic. 414.

Conveying land after it has been devised is *pro tanto*
a revocation of the will.　　3 Washburn on Real Prop. 538;
*Hawes* v. *Humphrey*, 9 Pick. 350; *Carter* v. *Thomas*, 4 Me.
341; Jarman on Wills, (1st Am. ed.) 130.

Consideration need not be adequate in equity any more
than at law.　　*Watson* v. *Doyle*, 130 Ill. 420; Waterman on
Specific Perf. secs. 179-189; *Crum* v. *Sawyer*, 132 Ill. 457;
Fry on Specific Perf. secs. 418-439, and notes; Wald's
Pollock on Contracts, (2d Am. ed.) 22, 173-176; Clark on
Contracts, 160, 163-165; 2 Pomeroy's Eq. secs. 925-928,
note 1; 1 Parsons on Contracts, 436; Bishop on Contracts,
sec. 101; *Lee* v. *Kirby*, 104 Mass. 428.

Any contract which, of itself, completes the transac-tion, so that nothing further is needed to perfect the
agreement, to convey the title or to carry out the inten-

tion of the parties, is an executed contract and needs no consideration to support it. Fry on Specific Perf. sec. 21; Story on Contracts, (4th ed.) sec. 18; 3 Parsons on Contracts, 360; Clark on Contracts, 1, 92; Story on Contracts, (5th ed.) secs. 23, 2; Bishop on Contracts, secs. 80-84, 101, 624; *Young* v. *Young*, 45 N. J. Eq. 27.

Family settlements to preserve the honor or family peace, and compromises made for that purpose, although of doubtful right, will be upheld by the courts. 2 Pomeroy's Eq. secs. 850, 871, 981; *Padfield* v. *Padfield*, 78 Ill. 17; 1 Story's Eq. sec. 132, pp. 140-142; Fry on Specific Perf. sec. 372; 1 Parsons on Contracts, 439, 440; 2 Spence's Eq. 288-290; *Sargent* v. *Baldwin*, 13 Atl. Rep. 854; *Burkholder's Appeal*, 105 Pa. 31; *Smith* v. *Smith*, 36 Ga. 184.

Where a person agrees to dispose of property by will and does not do so, or disposes of it to another, equity will do what is equivalent to specific performance, and make the persons taking it with notice, and all persons claiming under the grantor, convey it to the proper person. Equity will not allow such an agreement to be defeated by any devise or conveyance during the owner's lifetime. 3 Parsons on Contracts, 357-359, 406-408, notes, 361, note *f; Carmichall* v. *Carmichall*, 72 Mich. 78; *Taylor* v. *Mitchell*, 87 Pa. 518; *Champion* v. *Brown*, 6 Johns. Ch. 402; *Bollman* v. *Overall*, 80 Ala. 451; Fry on Specific Perf. secs. 218, 219, 223, and note 1 of 3d Am. ed. p. 103; Wald's Pollock on Contracts, (2d Am. ed.) 203, and notes on pp. 202, 203, 204; Bispham's Eq. sec. 365; Remedies and Personal Rights, sec. 112; 2 Pomeroy's Eq. secs. 591, 981; 1 Perry on Trusts, secs. 104, 108, 222, 223; 1 Spence's Eq. 453, 454; *Railroad Co.* v. *Swannell*, 157 Ill. 616; *Newton* v. *Newton*, 46 Minn. 33.

S. H. BETHEA, JAMES W. WATTS, and HENRY S. DIXON, for appellees:

The contract was not an absolute contract to make a will—it was a contract in the alternative. The promisor

had a right to make a will or to revoke it and refund the rent he had received under that contract.   Fry on Specific Perf. secs. 115, 127; Waterman on Specific Perf. secs. 23, 24; Pomeroy on Contracts, sec. 50; *Lyman* v. *Gedney*, 114 Ill. 398.

A contract to make a will without an adequate consideration is void and cannot be specifically enforced. Fry on Specific Perf. 105; Bispham's Eq. secs. 372, 374; Beach on Contracts, sec. 4; *Crandall* v. *Willig*, 166 Ill. 239; *Hamilton* v. *Harvey*, 121 id. 473.

The contract, under the circumstances and evidence in the case, was unconscionable, inequitable and unjust, and cannot be enforced in a court of equity.   *Seymour* v. *Delancy*, 6 Johns. Ch. 222; *Crandall* v. *Willig*, 166 Ill. 233; *Coles* v. *Trecothick*, 9 Ves. 246; Waterman on Specific Perf. sec. 180; 3 Pomeroy's Eq. Jur. sec. 1405, note 1.

Specific performance will not be decreed as a matter of right, and will not be granted except on clear and satisfactory evidence and where there is no doubt.   *Crandall* v. *Willig*, 166 Ill. 233; 2 Story's Eq. Jur. sec. 769; Fry on Specific Perf. 282; Waterman on Specific Perf. sec. 6.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

A bill in chancery was filed by John W. Barrett, the father of these appellants, against John Barrett and Sarah Geisinger, to cancel certain conveyances from John Barrett to Sarah Geisinger, and to restrain him from making further conveyances or devises of the land in controversy, and also to establish complainant's title thereto.   The complainant in that case was the son of the respondent, John Barrett, and Sarah Geisinger, the co-respondent, was a sister of the complainant in that bill.   Issue was formed, and on hearing the bill was dismissed and an appeal was had to this court, where the decree was affirmed.   The case is *Barrett* v. *Geisinger*, 148 Ill. 98, where all the facts of this bill are stated and

which will not be repeated in full. The complainants in this case were not parties to that adjudication. After the determination of that case these complainants filed their bill against Sarah and David Geisinger, praying for a cancellation of the deeds made by John Barrett to Sarah Geisinger, and that the latter be required to convey to complainants the land in controversy, and that the title thereto be declared to be in complainants, etc. Issue was joined on this latter bill, and on hearing a decree was entered dismissing the bill and adjudging the costs against the complainants, and they prosecuted an appeal to this court.

It appears that John Barrett was the owner of about one hundred and sixty acres of land, and about 1866 made an agreement with his son John W. Barrett, that if the latter would give him $75 a year, one-half the flour and pork necessary to keep himself and wife in provisions, and one-half the feed for a horse, at his death the said John W. should have the land in controversy. Some time after this John Barrett made a similar agreement with his son James Barrett for the other eighty above described, and he took possession of it and held possession until his death, in 1873. Shortly after the death of James Barrett, Sarah Geisinger took possession of this eighty under some arrangements with her father and has held it ever since. For the purpose of carrying out the agreement with John W. his father made a will in 1868 and another in 1874, devising the eighty to him, but in 1887 he made another will devising the eighty to the children of John W. Barrett.

Disagreements having arisen between John Barrett and his son John W. Barrett, an attempt to settle the same was made, and on June 8, 1889, a lease was made by the former to the latter of the land in controversy for and during the life of the lessor, which lease contained these provisions: "And the party of the second part, in consideration of the leasing of the premises as above set

forth, and in consideration of the covenants and agreements hereinafter contained on the part of the party of the first part, to pay as rent for the same to the party of the first part, at Compton, Illinois, the sum of $100 per annum, payable as follows: Fifty dollars on the first day of December, A. D. 1889, and $50 on the first day of each succeeding December and July for and during the term of this lease, and to pay all taxes levied or imposed upon the said premises during the term of this lease, and to keep the fences in a reasonable state of repair. And it is mutually agreed by and between the parties to this lease, that the party of the second part enters into this lease in consideration of the provisions of the will of the party of the first part bearing date the 22d day of February, A. D. 1887, and now in the hands of W. I. Guffin, of Compton, Illinois, by which provisions said premises are devised to the children of the party of the second part. And it is further agreed that said will shall not be changed in any manner nor for any purpose whatever, but shall remain the last will and testament of the said party of the first part to the day of his death, and in case said party of the first part shall violate this clause, then all rent paid under the terms of this lease shall be refunded to the party of the second part by the party of the first part, his heirs or personal representatives. And it is further mutually understood and agreed that said party of the second part claims to be the equitable owner of said premises, subject to his contributing to the support, as heretofore, of the party of the first part; that said party of the second part executes this lease for the purpose of securing the payment of the $100 per year, as above set forth, and for the further consideration expressed in the preceding clause. And it is further expressly agreed that neither party to this lease waives any right to or claim on the premises aforementioned existing at the time of the signing of this instrument. The covenants herein contained shall extend to and be

binding upon the heirs, executors and administrators of the parties to this lease."

At the time of making this latter lease the will of 1887 was placed in the hands of one W. I. Guffin, with the following written statement of John Barrett:

"*To W. I. Guffin:*

"In consideration of the lease and settlement this day entered into between John W. Barrett and myself, you are hereby instructed to take the custody of my will, dated February 22, 1887, and accompany this and keep the same until my decease, and not to deliver it in the meantime to myself even, or to any other person whomsoever.                    JOHN BARRETT, Sr.

"Dated June 8, A. D. 1889."

The claim for relief under this bill must rest on the fact of the execution of the will of 1887, the placing it in the hands of Guffin on June 8, 1889, and the agreements contained in the lease of June 8, 1889. By the lease John W. Barrett became a tenant for life at a stipulated rent for the land in controversy. The evidence shows the rent to be paid was much less than the rental value of the land. John W. Barrett having claimed the lands, and in the lease had it recited that he claimed to be the equitable owner thereof, sought to have that equitable ownership decreed to him, but that question was decided adversely to him in *Barrett* v. *Geisinger, supra.*

Contracts by which one undertakes to make a will devising property to another are valid and may be enforced. In *Bollman* v. *Overall,* 80 Ala. 451, it was held: "All the authorities agree that one may, for a valuable consideration, renounce the absolute power to dispose of his property by will to a particular person, and that such contract may be enforced in the courts after his decease, either by an action for its breach against his personal representative, or, in a proper case, by bill in the nature of specific performance against his heirs, devisees or personal representative. The validity of such agreements, as remarked by Mr. Freeman in a recent note on this sub-

ject to the case of *Johnson* v. *Hubbell*, 10 N. J. Eq. 332, (66
Am. Dec. 773, 784,) 'is supported by an unbroken current
of authorities, both English and American.' (*Wright* v.
*Tinsley*, 30 Mo. 389; *Parsell* v. *Stryker*, 41 N. Y. 480.) The
principle upon which courts of equity undertake to en-
force the execution of such agreements is referable to its
jurisdiction over the subject of specific performance. It
is not claimed, of course, that any court has the power
to compel a person to execute a last will and testament
carrying out his agreement to bequeath a legacy, for this
can be done only in the lifetime of the testator and no
breach of the agreement can be assured so long as he
lives, and after his death he is no longer capable of doing
the thing agreed by him to be done. But the theory on
which the courts proceed is to construe such an agree-
ment (unless void under the Statute of Frauds or for other
reason) to bind the property of the testator or intestate
so far as to fasten a trust on it in favor of the promisee,
and to enforce such trust against the heirs and personal
representatives of the deceased, or others holding under
them charged with notice of the trust. It is in the nature
of a covenant to stand seized to the use of the promisee,
as if the promisor had agreed to retain a life estate in
the property, with remainder to the promisee in the event
the promisor owns it at the time of his death, but with
full power on the part of the promisor to make any *bona
fide* disposition of it, during his life, to another otherwise
than by will."

In *Johnson* v. *Hubbell*, 10 N. J. Eq. 332, it was held:
"There can be no doubt but that a person may make a
valid agreement binding himself legally to make a par-
ticular disposition of his property by last will and tes-
tament. The law permits a man to dispose of his own
property at his pleasure, and no good reason can be as-
signed why he may not make a legal agreement to dis-
pose of his property to a particular individual or for a
particular purpose, as well by will as by conveyance, to

be made at some specified future period or upon the happening of some future event. It may be unwise for a man to embarrass himself as to the final disposition of his property, but he is the disposer, by law, of his own fortune, and the sole and best judge as to the manner and time of disposing of it. A court of equity will decree the specific performance of such an agreement upon the recognized principles by which it is governed in the exercise of this branch of its jurisdiction. (*Rivere* v. *Rivere*, 3 Dessaus. 195; *Jones* v. *Martin*, 3 Amb. 882; 19 Ves. 66; 3 id. 412; *Podmore* v. *Gurnsey*, 7 Sim. 644 to 654.) The validity of an agreement to devise this land was recognized by this court in *Stephan* v. *Reynolds, supra.*"

In *Emery* v. *Darling*, (Ohio,) 33 N. E. Rep. 715, it was held: "A promise to make a will in favor of a party, supported by a sufficient consideration and in due form of law, is a valid contract, and if not made, may be specifically enforced against the heirs of the promisor. It is supported by an almost unbroken current of authorities, both English and American."

It is stated in 3 Parsons on Contracts (p. 406): "It is obvious that an agreement to make a certain disposition of property by last will is one which, strictly speaking, is not capable of a specific execution,—not in the party's lifetime,—because any testamentary instrument is by its nature revocable, and after his death it is no longer possible to make his last will. Yet it has been held to be within the jurisdiction of equity to do what is equivalent to a specific performance of such an agreement, by requiring those upon whom the legal title has descended to convey the property in accordance with its terms. And the court will not allow this *post mortem* remedy to be defeated by any devise or conveyance in the lifetime inconsistent with the agreement."

Numerous other authorities might be cited sustaining the same rule. Like all other contracts there must be an adequate consideration for such contract or it is not

enforceable. Fry on Specific Performance (p. 105) says: "Such a contract is regarded with suspicion, and will not be sustained except upon the strongest evidence that it was founded upon a valuable consideration and was the deliberate act of the decedent."

Beach, in his first volume on Contracts, (sec. 4,) says: "Upon this ground a promise by one to make a particular testamentary disposition of property in favor of another is not binding, and cannot be enforced unless founded upon a sufficient consideration."

Bispham on Equity (sec. 372) says: "And in the first place, it is a fundamental principle that the extraordinary remedy of specific performance will not be administered save upon an application which is based on a valuable consideration." In section 373: "It is essential to specific performance that the consideration should be valuable. A merely good consideration, such as natural love and affection or the performance of a moral duty, will not be sufficient." And in section 374: "In some cases the adequacy of the consideration has been inquired into. Cases may occur in which the court will exercise discretion and will refuse to lend the aid of the chancellor to the enforcement in special of a hard and unconscionable bargain."

Such contracts must not be unconscionable, inequitable or unjust, for no court of equity will enforce specific performance of a contract of that character, as its enforcement rests in the sound legal discretion of the court. (*Hamilton* v. *Harvey*, 121 Ill. 469; *Crandall* v. *Willig*, 166 id. 233.) In this latter case it is held: "It rests in the sound legal discretion of the court whether it will or not compel the specific performance of a contract. True, that discretion must be exercised according to settled principles of equity, and not arbitrarily. (*Allen* v. *Woodruff*, 96 Ill. 11.) But to entitle the complainant to a decree the contract must be founded on a sufficient consideration, and must be reasonable, fair and just."

A contract in relation to the making of a will, which can have specific performance decreed, must be absolute in its terms. It must not be in the alternative or doubtful as to its construction. It is said by Fry in his work on Specific Performance (sec. 115): "The question always is, what is the contract? Is it that one certain act shall be done, with a sum annexed, whether by way of penalty or damages, to secure the performance of this very act? Or is it that one of two things shall be done at the election of the party who has to perform the contract, namely, the performance of the act or the payment of the sum of money? If the former, the fact of the penal or other like sum being annexed will not prevent the court enforcing performance of the very act, and thus carrying into execution the intention of the parties. If the latter, the contract is satisfied by the payment of a sum of money, and there is no ground for proceeding against the party having the election, to compel the performance of the other alternative."

Waterman on Specific Performance (sec. 23) says: "If the agreement be construed as giving to the party the option to do the act or pay a certain sum, equity will not interfere. In determining the question the court will have regard to the whole agreement, and not merely look at the language expressing the penal sum. It may treat the word 'penalty' as meaning liquidated damages, or the words 'liquidated damages' as meaning a penalty. It may do this notwithstanding the contract be alternative in its form, if the court can clearly see that the contract is to perform one of the alternatives." And in section 24: "If the agreement would be unreasonable unless the person stipulating to pay the sum had an option, this will be a strong circumstance for regarding the agreement as alternative."

This doctrine has been adopted in this State, (*Lyman* v. *Gedney*, 114 Ill. 388,) where the court says (p. 398): "It is only where the contract stipulates for one of two things

in the alternative,—the performance of certain acts or
the payment of a certain amount of money in lieu there-
of,—that equity will not decree a specific performance of
the first alternative,"—citing Waterman on Specific Per.
sec. 22, 23, and Pomeroy on Contracts, sec. 50.

By the provisions of the lease, which is the contract
sought to be enforced, "neither party to this lease waives
any right to or claim on the premises existing at the time
of the signing of this instrument." The lease also con-
tains this provision: "And it is mutually agreed by and
between the parties to this lease, that the party of the
second part enters into this lease in consideration of the
provisions of the will of the party of the first part, bear-
ing date the 22d day of February, A. D. 1887, and now in
the hands of W. I. Guffin, of Compton, Illinois, by which
provisions said premises are devised to the children of
the party of the second part. And it is further agreed
that said will shall not be changed in any manner nor
for any purpose whatever, but shall remain the last will
and testament of the said party of the first part to the
day of his death, and in case said party of the first part
shall violate this clause, then all rents paid under the
terms of this lease shall be refunded to the party of the
second part by the party of the first part, his heirs or
personal representatives." The provisions of this lease
in the way of refunding rent are to be determined from
the contract itself and the subject matter. Both parties
to that contract claimed the land in controversy. In de-
termining whether the agreement is to be construed as
giving an option to do the act or to pay a certain sum,
and taking into consideration that the lease was exceed-
ingly in favor of the lessee, being at much less than the
rental value, and that in reality no consideration passed
to the lessor or testator for the bequest, it is unreasona-
ble to suppose the intention of the parties was that the
lessor or testator did not reserve an option to himself to
regard the agreement in the alternative,—to refund the

rent or allow the terms of the will to be carried out. It would be unconscionable and unjust to otherwise construe the provision.

We find no sufficient consideration for this agreement. It does not exist, because a desired lease is taken at one-third the rental· value, and is not otherwise sought to be shown.

From all the facts in this record, and taking into consideration what is said in *Barrett* v. *Geisinger, supra,* we are of the opinion the circuit court committed no error in dismissing the bill, and its decree is affirmed.

*Decree affirmed.*