CAROLINE KLUSSMAN *et al.* Appellants, *vs.* MILTON WESSLING *et al.* Appellees.

*Opinion filed February 19, 1909.*

1. CONTRACTS—*proof must be clear to authorize enforcing a will as a contract.* To justify a court of equity in setting aside the probate of a will and in enforcing an earlier will upon the ground that the earlier will was executed in pursuance to an agreement between the testatrix and her husband that they should make mutual and reciprocal wills, the proof must clearly establish the existence of the agreement and that it was based upon sufficient consideration.

2. APPEALS AND ERRORS—*weight to be given the testimony is a question for the chancellor.* The weight to be given the oral testimony of the witnesses in a chancery proceeding is a question for the chancellor, and his findings therefrom will not be reversed by the Supreme Court unless from all the evidence it is made to appear there is palpable error.

APPEAL from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding.

This is a bill filed in the circuit court of Cook county asking to set aside an instrument dated September 13, 1905, theretofore probated as the will of Louisa Horman, (formerly Louisa Grimsell,) and to dispose of the estate according to the terms of an instrument dated October 26, 1880, on the ground that the last mentioned instrument was executed in pursuance of an agreement between Louisa and her husband, Henry Grimsell, whereby they drew mutual wills at the same date, the bequests in his will to her being conditional, it is claimed, upon her disposing of her property by will in a certain way at her death. After hearing the evidence the court dismissed the bill for want of equity, and from that decree appellants, who are designated as beneficiaries under the earlier instrument, appeal to this court.

Henry Grimsell executed his will, dated October 26, 1880, by which, after the payment of debts, he gave his three sisters and a friend, Charles Fischer, each certain land; to his brother, Frederick, one-half of the testator's hay and grain business on Milwaukee avenue, in Chicago; to religious purposes $1000, and all the rest, residue and remainder of the property to his wife, Louisa, "absolutely, in fee simple, forever." The instrument alleged in the bill to be the will of Louisa Grimsell was executed on the same date as that of her husband, and after the payment of debts gave to each of her brothers, Isaac and Jacob Wessling, $5000, for religious purposes $1000, and all the rest, residue and remainder of her estate to the heirs of her husband, Henry Grimsell, "absolutely, in fee simple, forever." The witnesses to both these instruments were William S. Young and Michael Heyl, the latter being dead at the time of this hearing. Henry Grimsell died in November, 1880. Louisa Grimsell was married again, in 1896, to Henry Horman, who died in 1902. In 1905 it became necessary for her to

undergo a serious surgical operation, and before she was taken to the hospital she was told that she had better settle her affairs if she wished to do so, and she executed a will dated September 13, 1905. It is stipulated that while this will was being finished and signed an ambulance was in waiting at the door to take her to the hospital. After the payment of her debts the will gave for religious purposes $300, to the three children of her deceased second husband $1000 between them, and of the balance, one-half was left to her brother, Isaac Wessling, and one-half to the children of her deceased brother, Jacob Wessling.

The instruments of October 26, 1880, were drawn up by William S. Young, an attorney, who also acted as one of the witnesses. He testified that he had been the attorney in several matters in which Mr. and Mrs. Grimsell had been interested for several years, prior to the making of these instruments; that in October, 1880, Henry Grimsell was suffering from cancer of the stomach and confined to his bed; that the witness was called to see him in reference to the settlement of his affairs and had several interviews, in each of which he explained to him and his wife what might be done. The substance of his testimony as to how it came about that these instruments were drafted and signed is as follows: "The first interview we had about the matter was probably three, four or five days before the execution of the two wills. We were in the back room where Henry lay, and I explained to his wife, in his presence, the condition of his estate and affairs. I told her that his desire was that she should have perfect and absolute control of his estate as long as she lived; that he had some legacies he wanted paid, but that the balance of the estate should go to his heirs at her death. I told them both how he could dispose of his estate, either by will or by trust or bill of sale, and we talked over different plans. I said to them that if he made a will, she, being a widow without children, could renounce and take according to law. She

said, in substance, that she was perfectly willing to do as I had indicated,—that is, he could make his will as I had drafted it and that she could make a will leaving such bequests as she wanted and the balance to his heirs-at-law. At the second interview they both said they were satisfied and that they would execute the wills I had sketched, which was in accordance with both their expressions to me as to the bequests which they contained, and we fixed on a day, which probably was the next day, to execute them and have the witnesses there. They were drawn the day after the second interview, just as soon as I got to my office. The will of Henry was read to him in the presence of Mrs. Grimsell and the parties named, and Mrs. Grimsell's will was read in the presence of us all. I read them, probably. I do not recollect that anything was said by either of them after the reading of the wills, regarding them,—nothing except the passing of Henry Grimsell's will to him and his wife's to me after they were executed."

MOSES, ROSENTHAL & KENNEDY, for appellants.

KICKHAM SCANLAN, and THEODORE H. WUNDERLICH, for appellees.

Per CURIAM: The rule is settled in this State that a person owning property may make a contract to dispose of it by will in a particular way, and that such a contract, when based upon sufficient consideration and clearly established, will be enforced in equity. (*Oswald* v. *Nehls,* 233 Ill. 438; *Jones* v. *Abbott,* 228 id. 34.) The theory upon which the courts proceed is to construe such an agreement (unless void under the Statute of Frauds or for other reasons) to bind the property of the testator or intestate so far as to fasten a trust on it in favor of the promisee and to enforce such trust against the heirs and personal representatives of the deceased. (*Barrett* v. *Geisinger,* 179 Ill.

240.) "An agreement to make a certain disposition of property by last will is one which, strictly speaking, is not capable of a specific execution,—not in the party's lifetime,—because any testamentary instrument is by its nature revocable, and after his death it is no longer possible to make his last will. Yet it has been held to be within the jurisdiction of equity to do what is equivalent to a specific performance of such an agreement by requiring those upon whom the legal title has descended to convey the property in accordance with its terms." (3 Parsons on Contracts, *406.) Courts of equity look with jealousy upon the evidence offered in support of such a contract and will weigh such evidence in the most scrupulous manner. (*Sloniger* v. *Sloniger,* 161 Ill. 270.) Such contracts "are only sustained when established by the clearest and strongest evidence." (*Dicken* v. *McKinley,* 163 Ill. 318.) The court must have full and satisfactory proof of the agreement. It has been held that "in this class of cases the ordinary rules which govern in actions to compel the specific performance of contracts and which furnish reasonable safeguards against fraud should be rigidly applied. These rules require the contract to be certain and definite in all its parts; that it be mutual and founded upon an adequate consideration and that it be established by the clearest and most convincing evidence." (*Edson* v. *Parsons,* 155 N. Y. 555.) Equity will not grant specific performance of such a contract if it is unconscionable, inequitable or unjust, or unless it is founded upon an adequate, sufficient and fair consideration. (*Barrett* v. *Geisinger, supra; Hudnall* v. *Ham,* 183 Ill. 486.) The instruments here in question, executed October 26, 1880, are claimed by the appellants to be mutual or reciprocal wills. "A mutual compact by two persons to make testamentary dispositions in each other's favor is apparently enforceable in equity in some cases, as where the survivor accepts the benefits under the dispositions of the deceased testator. But such a compact must be clear and

fair in its terms to make it binding." (1 Jarman on Wills,—6th ed.—*27.)

To enforce this will of 1880, not as a will but as a contract, would make a different disposition of the property of the deceased than is provided by law, and it is clear from the authorities that such contracts do not stand upon an especially favored footing; that a court will be more strict in examining into the nature and circumstances of such agreements than with other contracts; (*Johnson* v. *Hubbell*, (N. J. Eq.) 66 Am. Dec. 773, and note;) that in order to be enforceable they must not only have all the essential elements of any valid contract, "but the questions of consideration and certainty are presented in these contracts in peculiar aspects." (Page on Wills, sec. 71.)

Having in mind these rules of law, is the evidence in this case of such a character as to uphold appellants' contention that the wills of Henry Grimsell and Louisa Grimsell, executed October 20, 1880, were reciprocal or mutual wills, dependent upon each other, and that they were so made through a clear understanding and agreement on the part of both testators? Appellants contend that the instruments themselves offer strong internal proof that they were mutual or reciprocal; that Louisa Grimsell at that time was a woman in good health, about thirty-three years of age, and her husband was on his death-bed with an incurable disease and died very shortly thereafter; that no reason appears why she should make a will at that time except the one contended for by them, and especially a will that gave to her husband's heirs a large part of her estate. On the other hand, it is contended by appellees that if there was such an agreement as stated by Young, he being, as he testified, skilled in the drafting of wills, he would either in the instruments themselves or by a separate written document have stated in plain terms that the wills were reciprocal, and that if these were reciprocal wills it is most unreasonable to suppose that Young would have drafted Henry

Grimsell's will so as to give his property in fee simple absolute to his wife, Louisa Grimsell; that it is more unreasonable to conclude that these were mutual and reciprocal wills, with such a provision in the will of Henry Grimsell, than to conclude that there was some other reasonable ground for Louisa Grimsell executing her will on the same date as that of her husband. In this connection it is urged by appellees that there was no fair, adequate or sufficient consideration for the execution of such a will by Louisa Grimsell.

The evidence as to the property obtained by Louisa Grimsell from her first husband is not definite. From this record it appears that the estate left by Henry Grimsell was approximately some $50,000 or more. From the final report of Louisa Grimsell as executrix of that estate there was something over $30,000 in personal property, of which $7500 was in uncollectible book accounts. It also appears that she received several thousand dollars from her father's estate and also several thousand dollars from the estate of her second husband. Henry and Louisa Grimsell had no children. By law Louisa Grimsell, through renunciation of the will, would receive one-half of all the personal and real property, (*Blankenship* v. *Hall,* 233 Ill. 116, and cases cited,) besides her widow's award. According to the inventory of Henry Grimsell's estate he left twelve lots and a one-acre tract of land, apparently in different parts of Cook county and of widely different values. If Louisa Grimsell took under her legal rights by renunciation of the will, she should receive as her property, besides her widow's award, one-half of $30,464.50 (the personal property of Henry Grimsell's estate) and also one-half of said thirteen tracts of real estate. Under the arrangement of the mutual wills, as claimed by appellants, she would receive the life use of three of the lots and the acre tract, and the life use of one-half of the hay and grain business on Milwaukee avenue, and the life use of all the remainder of the

personal property except $1000 to be used for religious purposes, and she would also have the right to leave $11,000 of property to certain of her relatives.   It is impossible to tell from the record whether she would have received more of her husband's estate by renunciation or by taking under the will as limited by the agreement.   Just what is meant by adequate, fair or just consideration in contracts of this kind must depend largely upon the special facts in each given case.   This court held in *Barrett* v. *Geisinger, supra,* that a certain lease in reality was without consideration and refused to enforce the contract for a will.   In *Lord Walpole* v. *Lord Orford,* 3 Ves. Jr. 402, one of the leading cases on this subject, the court refused to enforce a mutual or reciprocal will as to the remainder under one of the wills, on the ground that the remainder under one will was worth nothing while that in the other "was infinitely more valuable."   We should hesitate, on the evidence in this record, to hold that the consideration received by Louisa Grimsell under the will of her first husband was sufficient to require the enforcement of the alleged contract as to her will of that date.

The only direct testimony of the alleged agreement as to said alleged reciprocal or mutual wills is that of attorney William S. Young, who drafted and witnessed them both. The record discloses that about 1894 he was appointed public guardian of Cook county and served in that office some three or four years; that by virtue of that office he was appointed guardian of many minors who were left without relatives in Cook county; that he proved unfaithful to his trust, and as a result, in 1899, was indicted and convicted of the larceny of a note for $1000 and sentenced to the penitentiary at Joliet, where he served eleven months; that since he came from the penitentiary he has been engaged in the practice of law and has been entrusted by many of his old clients with their legal business.   The chancellor below stated that he was impressed with the belief that the wit-

ness was sincere in his attempt to advise the court of the actual circumstances as they happened with reference to the drafting and execution of these wills, but that court held, after considering all the evidence offered, that it was not of such a nature to warrant the conclusion that these wills were executed to carry out the terms of an express contract between Henry Grimsell and Louisa Grimsell. The weight of this witness' testimony was for the trial court, (*Bartholomew* v. *People,* 104 Ill. 601,) as was the weight of all the testimony in the case, and this court will not· reverse the finding of the chancellor unless from all the evidence it is made to appear that there is clear and palpable error. (*Dowie* v. *Driscoll,* 203 Ill. 480, and cases cited.) This record discloses that Louisa Grimsell handled the estate of her husband, after paying the specific legacies in his will, as if all the property were owned in fee simple, absolutely, by her. Indeed, his will said it was hers absolutely, in fee simple. Young was the attorney who looked after most of the affairs in closing up her husband's estate. So far as this record discloses, no question was ever raised in any manner as to her not being the absolute owner of this property. It might well be doubted whether twenty-seven years after the execution of these instruments he could remember in detail all the particulars that he has testified to, but conceding the full weight of this testimony and that all the facts took place just as he stated, still does it show that Louisa Grimsell executed the instrument in question with the full understanding and agreement that it was irrevocable, and does such testimony show that the execution of her will was the moving cause which caused Henry Grimsell to leave his property as he did? The evidence in this record as to such a contract or agreement is not of the clearest and strongest and most convincing nature. Even if it be conceded that the trial judge in his opinion laid down rules governing the proof as to such an agreement that are not in accordance with the authorities, (which we

do not find it necessary to decide,) yet manifestly this record is not of such a character as to justify setting aside the chancellor's decree on the ground that it is clearly and palpably erroneous.

The decree of the circuit court will be affirmed.

*Decree affirmed.*